Negrón Soto, Juez Ponente
*953 TEXTO COMPLETO DE LA SENTENCIA
El señor Jorge A. Padilla, el demandante-apelante, nos solicita que revoquemos la sentencia dictada el 28 de octubre de 1998 por el Tribunal de Primera Instancia, Sala Superior de Ponce, mediante la cual se declaró con lugar la demanda incoada por éste, y se ordenó a la señora Gloria Nazario y al señor Ismael Nazario, en adelante los apelados, a pagarle al demandante seis mil cuatrocientos dólares ($6,400), más el nueve punto cinco por ciento (9.5%) anual de intereses a computarse desde el mes de febrero de 1997 hasta que sea satisfecha la deuda. A su vez, declaró con lugar la reconvención instada por los apelados, y le ordenó al demandante pagarle nueve mil seiscientos sesenta y un dólares ($9,661), más los intereses al nueve punto cinco porciento (9.5%), a computarse desde el día que fue dictada la sentencia hasta que se salde ese dinero.
Los esposos Nazario contrataron al demandante para que hiciera unas mejoras en su casa, localizada en el Barrio Machuelo Arriba, Sector La Yuca, Carretera 505, Km. 2.7, en Ponce, Puerto Rico. Se preparó un listado de los trabajos que se habían acordado, el cual se firmó por la señora Nazario y el demandante el 9 de junio de 1996. En este contrato se pactó la “terminación completa” de la casa antes descrita por la cantidad de treinta y dos mil dólares ($32,000). Surge de las determinaciones de hechos formuladas por el tribunal a quo que la señora Nazario iba frecuentemente al lugar donde se realizaba la construcción a inspeccionar el trabajo que hacían los empleados del demandante.
Mientras se llevaba a cabo la obra, los apelados le fueron solicitando al apelante que hiciera unos trabajos adicionales a los incluidos en el contrato. Este aceptaba hacerlos según se los iban pidiendo. Sin embargo, en la mayoría de los casos, las partes no acordaron el precio de los trabajos adicionales, por lo que el demandante comenzaba a realizarlos para luego determinar unilateralmente su precio. Hasta el momento que se dictó la sentencia apelada, el demandante había recibido de los apelados treinta y un mil doscientos dólares ($31,200).
Durante el mes de febrero de 1997, el apelante intentó cobrarle a los apelados el importe de estos trabajos adicionales, pero no tuvo éxito. Entonces, instó una acción en cobro de dinero en la cual alegó que terminó todos los trabajos que le encomendaron y que todavía le adeudaban ochocientos dólares ($800) por los trabajos incluidos en el contrato original, más diez mil cuatrocientos sesenta y siete dólares ($10,467) por los trabajos adicionales. Los apelados negaron la deuda y adujeron que la mayoría de los trabajos estaban incluidos en el contrato original, por lo que el demandante erróneamente se estaba refiriendo a ellos como adicionales. En consecuencia, presentaron una reconvención basada en el incumplimiento del contrato. Alegaron que el demandante no había terminado algunos trabajos y que otros habían quedado defectuosos, razón por la cual tuvieron que terminar los mismos, aunque ya le habían pagado al demandante. Sostuvieron, además, que habían sufrido angustias mentales. 
El Tribunal de instancia determinó que los únicos trabajos adicionales en los que se acordó el precio con los apelados antes de comenzarlos fueron los descritos como “20.5 yardas de concreto en el patio trasero de la residencia” que tiene un precio de cuatro mil cien dólares ($4,100) y el de “5 columnas para reforzar el peso de balcones”, con un valor de mil quinientos dólares ($1,500). A su vez, concluyó que el demandante fue negligente en el cumplimiento del contrato escrito en las siguientes áreas:

“a. No selló el techo de forma que éste quedara impermeable. Sólo se limitó a sellar grietas que existían en él.

*954
b. No compró los materiales de los “closets” de toda la casa, ni los instaló.

c. No compró parte de los materiales de alambrado para la instalación eléctrica.

d. No compró los materiales para la instalación del desagüe de la bañera.

e. No instaló la totalidad de las puertas de la casa, sólo instaló dos (2).

f. No compró los azulejos para todos los baños de la casa.

g. No hizo todo lo necesario para la terminación de la rampa, ya que no puso la lechada a las orillas de las lozas, ni instaló la pared donde iba el relleno. ”

Por tal razón consideró que los apelados tuvieron que invertir las siguientes cantidades de dinero para terminar los trabajos que estaban detallados en el contrato o los adicionales que dejó de hacer el demandante y que son objeto de este recurso:

“a. Sellar el techo de la casa $3,000.00

b. Materiales para los “closets” y su instalación $3,119.90

c. Materiales de alambrado para la instalación eléctrica $1,250.00

d. Materiales para la instalación del desagüe de la bañera.... $32.00

e. Terminación de la rampa $260.00

Total $7,661.90”.

La vista en su fondo del caso de epígrafe se llevó a cabo el 17 de abril de 1998. En ella el Tribunal a quo dispuso que en el término de quince (15) días a partir de la fecha de esa audiencia, el demandante tenía que presentar bajo juramento un desglose de los trabajos realizados que no estaban en el contrato firmado entre las partes, incluyendo la cantidad de dinero invertida para realizarlos, con lo cual se cumplió. Además, ordenó a los apelados someter bajo juramento un desglose del dinero invertido para terminar los trabajos que éstos alegaban que el apelante no llevó a cabo o los realizó de forma defectuosa, lo que hicieron. A su vez, concedió a las partes diez (10) días, a partir de los quince (15) días antes señalados, para replicar si lo entendían necesario. Así lo hizo el demandante, quien también solicitó determinaciones de hechos y conclusiones de derecho adicionales. El Tribunal apelado denegó esa solicitud mediante resolución de 21 de enero de 1999, notificada el 2 de febrero siguiente.
Inconforme, el demandante le imputa al Tribunal a quo que erró al determinar:

“1- Que entre la prueba de la parte demandada consistió [sic] están 7 facturas.

2- Los demandados tuvieron que invertir las siguientes cantidades para terminar los trabajos que estaban detallados en el contrato y que incumplió el demandante.

A. Sellar el techo de la casa $3,000.00

*955
B. Materiales para los “closets” y su instalación $3,119.90 B. Materiales para los “closets” y su instalación $3,119.90

C. Materiales de alambrado para la instalación eléctrica $1,250.00

D. Materiales para el desagüe de la bañera $32.00

E. Terminación de la rampa $260.00

3- El demandante no tiene derecho a cobrar por la totalidad de los trabajos por él realizados. La mayoría de los trabajos verbales pactados entre el demandante y la co-demandada, Gloria Nazario, para que aquél realizara trabajos adicionales no se llegaron a perfeccionar. ”

Expongamos primeramente el derecho aplicable a las controversias del caso de marras.
II
Al examinar los errores imputados al Tribunal de Primera Instancia, los cuales se refieren a la apreciación de la prueba desfilada y a los documentos presentados en evidencia, debemos tener presente que es norma general en derecho que los tribunales de instancia están en mejor posición que los foros apelativos para aquilatar la prueba testifical que se aporta en un juicio. El alcance de la revisión judicial sobre cuestiones de hecho está regulado por lo dispuesto en la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, la cual, en lo pertinente, dispone que:
"... [l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos... ”.
Por ello, nuestro Tribunal Supremo ha establecido que no debemos “... intervenir con las determinaciones de hechos que hace un tribunal de instancia” y “... sustituir su... criterio por el del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su demeanor, ” Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R. 357, 365 (1982), “a menos que se demuestre que dicho foro actuó con pasión, prejuicio o parcialidad”. Flores v. Domínguez, 98 J.T.S. 96, a la pág. 1354; Stokes v. Serrano, 98 J.T.S. 48, a la pág. 850; Vélez v. Srio. de Justicia, 115 D.P.R. 533, 545 (1984). Así, la apreciación de la prueba efectuada por el Tribunal de Primera Instancia merece gran deferencia, por lo que sólo en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto los tribunales de apelaciones no intervendrán en cuanto al trasfondo fáctico determinado por instancia Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez Cruzv. Hosp. La Concepción, 115 D.P.R. 721, 728 (1984).
No obstante, los foros apelativos pueden dejar sin efecto las determinaciones de hechos del foro de instancia siempre que “del examen de la totalidad de la evidencia, el tribunal de revisión queda definitiva y firmemente convencido que un error ha sido cometido, como es el caso en que las conclusiones de hecho están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida.” Maryland Casualty v. Quick Construction Corp., 90 D.P.R. 329, 336 (1964). Como se dice en Vda. de Morales v. De Jesús Toro, 107 D.P.R. 826, 828 (1978), “[e]l arbitrio del juzgador de hechos es respetable, mas no absoluto. Una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal. ” Además, el foro apelativo está en igualdad de condiciones para apreciar la pmeba documental, Armstrong v. Ortiz, 105 D.P.R. 634, 635 (1977); Miranda v. Editorial El Imparcial, Inc., 99 D.P.R. 601 (1971), y pericial presentada, Díaz Ortiz v. F.S.E., 126 D.P.R. 32, 41 (1990); Alonso v. Comisión Industrial, 103 D.P.R. 712, 714 (1975); Valldejuli Rodríguez v. A.A.A., 99 D.P.R. 917 (1971); E.L.A. v. *956 Fonalledas Córdova, 84 D.P.R. 573 (1962), y para aquilatar el testimonio de un testigo ofrecido mediante declaración escrita, Castro v. Meléndez, 82 D.P.R. 573, 576 (1961).
Respecto a la doctrina aplicable a los contratos, tengamos presente que éstos existen “...desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. ” Artículo 1206 del Código Civil, 31 L.P.R.A. sec. 3371. Conforme a los Artículos 1210 y 1230 del Código Civil, “[IJos contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y ala ley”, 31 L.P.R.A. sec. 3375; Mattei Nazario v. Vélez & Asoc., 98 J.T.S. 55, a la pág. 921, y "... serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez. ”31 L.P.R.A. sec. 3451.
De otra parte, el Artículo 1213, 31 L.P.R.A. sec. 3391, establece los requisitos para la validez de un contrato, disponiendo que no habrá contrato, sino cuando concurran el consentimiento de los contratantes, un objeto cierto que sea materia del contrato y se establezca una causa de la obligación. Colón Rivera v. Promo Motor Imports, Inc., 97 J.T.S. 153, a la pág. 451. A su vez, el Artículo 1225, 31 L.P.R.A. sec. 3423, dispone que:

“El objeto de todo contrato debe ser una cosa determinada en cuanto a su especie. La indeterminación en la cantidad no será obstáculo para la existencia del contrato, siempre que sea posible determinarla sin necesidad de nuevo convenio entre los contratantes. ”

No obstante, el Artículo 1229, 31 L.P.R.A. see. 3434, señala que aunque la causa no se exprese en el contrato, se presume que existe y que es lícita mientras el deudor no pruebe lo contrario. Por causa se entiende, en los contratos remuneratorios, "... que es el servicio o beneficio que se remunera...”. Artículo 1226, 31 L.P.R.A. sec. 3431.
Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. Artículo 1207, 31 L.P.R.A. sec. 3372. La validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes. Artículo 1208, 31 L.P.R.A. sec. 3373; Hernández Torres v. Padilla Morales, 97 J.T.S. 49, a la pág. 893.
Nuestro Tribunal Supremo ha establecido que “jijas acciones derivadas de contratos tienen por objeto que se cumplan las promesas contractuales sobre las que las partes de un contrato otorgaron su consentimiento. Surgen éstas de las obligaciones que libremente han convenido los contrantes y nacen de una acción u omisión voluntaria por lo que resulta incumplida una obligación anteriormente constituida. ” Santiago Nieves v. A.C.A.A., 119 D.P.R. 711, 716 (1987). De la misma manera, citando a Puig Brutau, el Tribunal Supremo consignó que “jejon criterio más estricto, la palabra contrato hace referencia al acuerdo de voluntades de dos o más partes por lo que se crean, modifican o extinguen relaciones pertenecientes al Derecho de obligaciones. En este sentido se ha dicho que todo contrato es un negocio jurídico bilateral, pero que no todo negocio jurídico bilateral es un contrató”. Santiago Nieves v. A.C.A.A., supra, a la pág. 718.
Nos resta por discutir el tema del enriquecimiento injusto. Es sabido que “uno de los principios fundamentales que están presentes en el Código Civil es el que nadie se enriquezca injustificadamente en perjuicio de otro. ” E.L.A. v. Soto Santiago, 131 D.P.R. 304, 318 (1992). La doctrina de enriquecimiento injusto es un principio general del derecho fundado en la equidad que informa todo el ordenamiento jurídico cuando la ley no ha previsto una situación en la que se produce un desplazamiento patrimonial que no encuentra una explicación razonable en el ordenamiento vigente. Garriga v. Condominio Marbella del Caribe, 97 J.T.S. 129, *957 a la pág. 130; Ortiz Andújar v. E.L.A., 122 D.P.R. 817, 822 (1988). Para que exista se tienen que dar los siguientes requisitos:
“1) Existencia de un enriquecimiento,

2) Un correlativo empobrecimiento.

3) La conexión entre empobrecimiento y enriquecimiento.

4) Falta de causa que justifique el enriquecimiento.

5) Inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa.” Garriga v. Condominio del Caribe, supra; Ortiz Andújar v. E.L.A., supra; E.L.A. v. Soto Santiago, supra.
Apliquemos estas normas de derecho a la situación fáctica de este caso.
III
En cuanto al primer error, no hace diferencia si eran facturas o estimados los que presentaron los demandados-apelados, ya que lo importante era determinar quién tenía la obligación de hacer tal trabajo y cuál era su costo. La realidad era que mientras las labores alegadamente incumplidas por el demandante no se hiciesen, los apelados sólo podían presentar estimados. Además, luego de haber estudiado la prueba ante nos, entendemos que obra en autos prueba sustancial para fundamentar la actuación del tribunal a quo, con las modificaciones que discutiremos más adelante.
IV
En cuanto al segundo señalamiento de error, el demandante alega expresamente que el Tribunal apelado le ordenó pagarle a los apelados unas obras que éste no terminó. Examinemos la prueba que obra en los autos partida por partida:

“1) Sellar el techo- La cláusula 16 del contrato, dice la siguiente:

Sellar techo- y empañetar cornisa... y orillas de cornisa (grietas a los lados). ”
De la prueba presentada por las partes, surge que el demandante incumplió con esta obligación contractual. Específicamente, en la contestación a la reconvención, el demandante acepta que no selló el techo. En la moción proveyendo prueba adicional del 3 de noviembre de 1997, los apelados le informaron al Tribunal apelado “que dada la naturaleza continua del Mecanismo de Prueba, se proveen copias de facturas”. Una de éstas era el sellado del techo, por un valor de tres mil cien dólares ($3,100). Aunque el estimado del 24 de agosto de 1997 de la Polyurethane Roof Contractors reflejaba una cantidad de tres mil ciento sesenta dólares ($3,160), de la declaración jurada de los apelados del 29 de abril de 1998, surge que: "... no sello [sic] el techo de la casa, ni comisas, ni grietas, por lo cual pagué $3,000.” El demandante, en su réplica a la declaración jurada de los apelados, asevera "... que se corrigieron todas las grietas y la cornisa [sic] siendo [sic] inspeccionado y aceptado por el co-demandado. LA PARTE DEMANDADA NO SOMETE FACTURA DE PAGO.” Además, en su contestación (#17) al interrogatorio cursádole por los demandados, el demandante contestó que “[l]o que se acordó fue sellar con cemento unas grietas que estaban un poco anchas, para luego ellos contratar una persona que le diera un tratamiento de sellado al techo completo. ”
2) Los closets- En la contestación a la reconvención, los demandados alegaron que el apelante “no instaló *958 ningún closet. ” En la declaración jurada, prestada por la demandada-apelada, Sra. Gladys Nazario, el 29 de abril de 1999, se sostiene que el demandante contrató al señor Edwin Ramírez para que hiciera ocho (8) closets con un costo de tres mil ciento diecinueve dólares ($3,119) y no los pagó, por lo que los apelados tuvieron que pagar dicha partida. En la contestación al interrogatorio del demandante, la apelada había aseverado eso mismo.
Del antes citado apartado (3) del contrato surge que los closets: "... son cuartos,... , lacena, baños, bajo escalera y escalera bajo rampa (incluyepiso)”.
En la réplica del 7 de mayo de 1998, el demandante señaló que en el contrato se acordó la instalación de los closets pero “...no incluia las puertas, ni lós marcos. Reclama un pago de $3,119.90 (sic). LA PARTE DEMANDADA INCLUYE FACTURA POR MANO DE OBRA POR LA CANTIDAD DE $1825”. De otro lado, se sometieron dos facturas: la #10760 del 12 de febrero de 1997 por mil ochocientos setenta y cinco dólares ($1,875), en la cual se incluyó las puertas de los closets, y otra con el #107605 por mil doscientos noventa y cuatro con noventa centavos ($1,294.90) cubriendo otros materiales y sin incluir la mano de obra, para un total de de tres mil ciento diez y nueve con noventa centavos, ($3,119.90).
3) El alambrado- Sobre este aspecto dispone el contrato que la:
7) Instalación eléctrica. Todo (menos certificar y alambrar), incluye materiales, poste elect., zanjas, tubos extensiones, arreglo y cambios de ya existentes.
En la contestación a la demanda y reconvención, los apelados alegan que el apelante no pagó los materiales para la instalación eléctrica. En su declaración jurada, los demandados sostienen que tuvieron que pagar todos los materiales de electricidad, los cuales sumaron a mil doscientos cincuenta dólares ($1,250). En la réplica a la declaración jurada, el demandante señaló que “[l]a casa estaba alambrada, mi única responsabilidad era construir la columna para la toma de corriente y conectarla a la casa, lo cual se hizo. LA PARTE DEMANDADA NO SOMETE FACTURA DEL PAGO DE MATERIALES QUE RECLAMA. ”
En la factura fechada en marzo de 1997 por el señor Juan Meléndez sometida en evidencia por el demandado, desglosa ese el trabajo ascendente en mil novecientos cincuenta dólares ($1,950), en setecientos dólares ($700) por la mano de obra y en mil doscientos cincuenta dólares (1,250) por los materiales. Esta factura incluia el trabajo realizado de alambarado y de la certificación de A.E.E., sin decir qué parte del dinero facturado correspondía a esas áreas. Como el contrato no incluia las partidas del alambrado y la certificación de la A.E.E. y en el contrato éstos no fueron desglosados, no podemos determinar qué parte de la misma no estaba incluida en el contrato. Así, los demandados-apelados no pusieron al Tribunal a quo en posición de determinar exactamente lo que le debía el demandante a los demandados-apelados por ese concepto. Por ello, debemos modificar la sentencia apelada para eliminar la partida sobre esos materiales, fijados en mil doscientos cincuenta dólares (1,250).
4) Rampa- Los apelados alegan en su declaración jurada que en cuanto a la rampa “...no pulió el piso (sic) terrazo lavado, no puso la lechada a orillas de lozas en rampa, no puso pared donde iba el relleno por (sic) cual pagué $260. ”
El apelante replicó en su escrito que “.. si es terrazo lavado no se puede pulir... es para que no resbale. Ates [sic] de tirarlo visitamos unos amigos de ella y ese fue su pedido. ‘Terrazo lavado’ (sic). LA PARTE DEMANDADA NO SOMETE FACTURA DEL PAGO QUE RECLAMA. ” El contrato en su acápite 9 dispone que la:

*959
“Terminación rampa-empañetado y [sic] igualar lados... todo los materiales necesarios para la terminación de la misma

5) Desagüe- Del contrato antes referido surge que sobre esta área el mismo dispone lo siguiente:

5) Plomería- toda la terminación incl. (sic) materiales. Incluye tomas extras de H20.

6) Instalación de equipos sanitarios y todos los materiales (no incluye bañera, bacineta, lavamanos, bidet y mezcladora de... ”.

Sobre esa partida bajo desagüe, aparece que fueron pagados treinta y dos dólares ($32) a la ferretería Bonnin y Co. Como el contrato detallaba los trabajos a realizarse y señalaba que cubría cualquier otro trabajo relacionado con los anteriormente detallados, es forzoso entender que esta partida era de responsabilidad del demandante.
Como se desprende de lo antes discutido, la prueba presentada por las partes, con excepción de los mil doscientos cincuenta dólares ($1,250) referentes a los materiales de alambrado para la instalación eléctrica, justificó la determinación del tribunal de instancia. Ese Foro, luego de considerar la prueba ante las teorías de las partes, dirimió la credibilidad que le mereció la prueba testifical presentada y determinó que los demandados tuvieron que invertir ciertas cantidades de dinero para terminar los trabajos incumplidos por el demandante. Estando sostenidas tales determinaciones por dicha prueba, en ausencia de error, prejuicio o parcialidad del juez de instancia, es imposible acceder a lo que pretende el demandante-apelante.
Es sabido que los tribunales no están para facilitar, ni permitir que las partes evadan el cumplimiento de sus obligaciones. Matricardi v. Peñagarícano Admor., 94 D.P.R. 1 (1997).
V
En cuanto al tercer error, el tribunal a quo dispuso que el demandante-apelante no tiene derecho a cobrar por todos los trabajos adicionales que llevó a cabo en la residencia de los apelados, ya que no se perfeccionó el contrato entre las partes; es decir, no se pactó el precio. Sin embargo, éste sí tiene derecho a ser indemnizado por el trabajo adicional acordado con los apelados y que efectivamente realizó de acuerdo al contrato.
Alega que tiene derecho a cobrar por la totalidad de los trabajos por él realizados, aunque para éstos no se hubiese pactado un precio determinado. Como determinó el Foro apelado, las partidas que tiene derecho el apelante a cobrar, según determinó el Foro de instancia, son: cuatro mil cien dólares ($4,100) de las 20.5 yardas de concreto en el patio trasero de la residencia y los mil quinientos dólares ($1,500) de las cinco (5) columnas construidas para reforzar el peso de los balcones. Estas partidas fueron objeto de prueba y, además, fueron detalladas por el apelante en la declaración jurada que presentó al Tribunal, según éste les requiriera a las partes el día de la vista en su fondo. Lo contrario produciría un enriquecimiento injusto de parte de los demandados, ya que éstos le solicitaron al demandante que llevara a cabo tareas que no estaban incluidas en el contrato. El demandante las llevó a cabo y no ha sido compensado.
VI
En resumen, el Tribunal resolvió que:
"... los demandados tienen derecho a una indemnización en daños y perjuicios igual a la cantidad que tuvieron que sufragar para cubrir los incumplimientos del demandante (determinación de hechos número 14) la cual asciende a la suma de $7,661.90 más $2,000 adicionales por los inconvenientes que tuvieron que sufrir *960 por /as filtraciones del techo de la residencia, correspondiéndole a cada demandado-reconveniente la-cantidad de $1,000.00. ”
Sólo el demandante-apelante ha controvertido la partida de los seis mil seiscientos sesenta y un dólares con noventa centavos ($6,661.90), de los cuales determinamos que estuvieron bien concedidos todos excepto los relativos al alambrado, o sea, los materiales usados en la instalación eléctrica por un valor de mil doscientos cincuenta dólares ($1,250). Así, lo concedido se reduce a cinco mil cuatrocientos once dólares con noventa centavos ($5,411.90).
VII
Por los fundamentos anteriormente expuestos, modificamos la sentencia apelada a los efectos de reducir la partida de $6,661.90 a $5,411.90. Así modificada se confirma.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2000 DTA 54
1. El contrato suscrito por las partes detalla y enumera un total de dieciocho (18) trabajos. En cada trabajo detallado se especifica si el contratista habría de suplir todos los materiales, parte de ellos, o sólo la mano de obra. A su vez, en el último acápite de la lista aparece la siguiente disposición: “...y cualquier otra cosa no incluida (olvidada en la lista}. ”
2. Surge de la sentencia apelada que el demandante llevó a cabo un total de ocho (8) trabajos adicionales a los que se detallaron en el contrato, los cuales sumaban a nueve mil seiscientos sesenta y siete dólares ($9,667).
3. El tribunal a quo estimó que los apelados habían sufrido angustias mentales al sentir que tuvieron que pagar dos veces por el trabajo de los “closets” para su residencia y al encontrar que el techo de la misma no había quedado sellado como ellos lo habían pedido, lo que le producía inconvenientes y molestias cada vez que llovía.
4. Demeanor es el “proceder, comportamiento, conducta de alguien”, o sea, la de los testigos observada en el proceso. Gerardo Solís, Raúl A. Gasteazoro, Jr., West's, Diccionario Legal Español-Inglés, Inglés-Español, St. Paul, Minn. West Publishing Co., 1992, pág. 492.
5. Aunque es difícil de entender, aparentemente se refiere a las habitaciones.
6. La partida de ochocientos dólares ($800) no está en controversia, ya que los apelados aceptan en su contestación a la demanda y reconvención que adeudan $800.
7. Aunque la sentencia apelada en su parte adjudicativa dice nueve mil novecientos sesenta y un dólares ($9,961), lo correcto es que omitieron los noventa centavos (0.90) por inadvertencia.