ALCIDES DÍAZ ORTIZ, lesionado y recurrido, *v.* FONDO DEL SEGURO DEL ESTADO, asegurador y recurrente.

*Número:* CE-88-278    *Resuelto:* 2 de abril de 1990

---

*Carlos Cedeño Ubiñas*, abogado del recurrente; *Andrés Cruz González*, de *Manuel De Jesús Mangual & Asociados*, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

En apoyo de este recurso, el Fondo del Seguro del Estado (F.S.E.) sostiene que erró la Comisión Industrial al resolver que la condición emocional que padece el aquí recurrido Alcides Díaz Ortiz es compensable según nuestra Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 1 *et seq.*, sin prueba alguna suficiente en derecho que justifique su determinación.

Una breve descripción de los hechos servirá para ubicar el contenido de la controversia.

El Sr. Alcides Díaz Ortiz trabajó por alrededor de diecinueve (19) años para las firmas comerciales de Rafael J. Nido, Inc. y Chain Link Fence, Inc. Se dedicaba a la venta al por mayor de materiales de ferretería y construcción. Don Alcides era considerado el vendedor de mayor producción en ambas compañías. Los vendedores de ambas compañías tenían asignado cierto número de clientes en varias rutas que visitaban durante la semana para vender y cobrar las ventas, excepto los viernes en la tarde cuando se reunían con los supervisores de ventas para discutir los asuntos

del negocio. A finales de 1981, y como resultado de las fluctuaciones económicas que atravesaba nuestro país, el mercado de la construcción se vio seriamente afectado. Esto trajo la consecuente disminución en ventas de materiales de construcción.

Con el fin de poder hacer frente a estas bajas en las ventas, la gerencia de Rafael J. Nido, Inc. se vio obligada a reestructurar todas sus rutas, asignándoles así a cada uno de sus vendedores menos clientes.(1) Esto supuestamente tendría el efecto de disminuir los ingresos de cada uno de los vendedores. Según la gerencia, y como más tarde los mismos vendedores indicaran, esta baja sería sólo de carácter temporal y de corto plazo.

. Se alega que a raíz de tal cambio, don Alcides comenzó a mostrar síntomas tales como desorientación, dificultad para realizar su trabajo y depresión. En consecuencia, Díaz Ortiz dio por terminada su carrera como vendedor de ambas firmas comerciales alrededor de 3 de marzo de 1982.

Hacia 16 de marzo de 1982, don Alcides comenzó a recibir tratamiento psiquiátrico con el Dr. Diego Coira. Este tratamiento, de carácter privado, se prolongó por alrededor de tres (3) años. Don Alcides visitaba el consultorio una vez por mes, según surge

---

(1) De acuerdo con el informe preparado por el Oficial Examinador, obrante en autos, así como el resto de la evidencia presentada indican que los cambios consistirían en:

"5. Que con el fin de aumentar las ventas, se llevaron a cabo una serie de cambios en la política de las ventas de ambas compañías. Estos cambios fueron los siguientes:

"'a. Se hizo una evaluación del potencial en el mercado que tenían las diferentes áreas geográficas y se reasignaron las cuentas. Con esta reestructuración, tanto a don Alcides como a otro vendedor le quitaron una de las rutas, las cuales se le entregaron a un nuevo vendedor. Esto se hizo con el propósito de que [a] cada vendedor le quitaron una de las rutas, las cuales se le entregaron a un nuevo vendedor [para que así] tuvieran más tiempo para dedicarle a sus clientes con el fin de que aumentaran las ventas.

"'b. Los vendedores dejaron de recibir comisiones por las ventas que se generaban por teléfono.

"'c. Se le asignaron cuotas de ventas a los vendedores.

"'d. Con anterioridad a febrero de 1982, al vendedor se le liquidaban a fin de mes las comisiones de los cobros que realizaban. Desde febrero de 1982 la compañía adoptó la política de pagarle la mitad de la comisión cuando se realizaba la venta y la otra mitad de su comisión cuando cobrara las ventas que se habían realizado.'

"6. Que cuando se le presentó a los vendedores la nueva política de las compañías se les garantizó verbalmente que durante los primeros seis meses, (desde febrero hasta agosto) de éstos no poder realizar la misma cantidad de ventas que realizaron el año anterior, las compañías le[s] pagarían la diferencia para que no se afectaran económicamente." Informe del Oficial Examinador, 19 de octubre de 1987, pág. 17.

de los informes suscritos por el propio doctor Coira, en o cerca de 23 de agosto de 1985. Se llegó a un diagnóstico de depresión mayor y se le prescribió psicoterapia y psicofármacos.

En concurrencia con su tratamiento psiquiátrico privado, el aquí recurrido se personó a las facilidades del F.S.E. en 24 de mayo de 1982 y alegó padecer de desorientación y depresión nerviosa.

Según los procedimientos internos requeridos, el señor Díaz Ortiz fue referido a la correspondiente atención médica —evaluado y tratado por el Dr. Jesús Infanzón, psiquiatra del asegurador (F.S.E.)— quien diagnosticó que el recurrido padecía de una neurosis depresiva.

Investigadas todas las alegaciones, el Dr. Luis R. Ríos Mellado, también psiquiatra del F.S.E., dictaminó que el padecimiento emocional que Díaz Ortiz sufría no tenía relación alguna con el trabajo que había realizado por diecinueve (19) años, por lo que recomendó que se le denegara la compensación solicitada. Se emitió la correspondiente decisión denegatoria de compensación en 9 de febrero de 1984.

Con el propósito de poder dilucidar el caso, la Comisión Industrial celebró varias vistas públicas (28 de agosto de 1985, 26 de mayo de 1986 y 28 de enero de 1987). Ofrecieron sus testimonios en estas vistas el Sr. José A. Ruiz, supervisor del recurrido, y el Ledo. Ángel M. Galiñanes, Vice Presidente Ejecutivo de las firmas para las cuales trabajó el recurrido. stos declararon sobre las condiciones de trabajo del señor Díaz Ortiz como vendedor, sus ingresos(2) y la forma en que los generó mientras trabajó. En ningún momento el recurrido declaró.

El testimonio pericial sobre relación causal consistió en el de los doctores Luis Raúl Alfaro, consultor de la Comisión Industrial y Rafael Nogueras por el F.S.E. Se presentaron, además, las evaluaciones psiquiátricas del recurrido que tuvo ante sí el F.S.E.

---

(2)  Es importante indicar que los ingresos del lesionado recurrido fluctuaban considerablemente de año en año. De acuerdo con la evidencia obrante en autos, surge que durante los últimos cuatro (4) años Díaz Ortiz se ganó lo siguiente: 1978 – $24,307.23; 1979 – $18,875.08; 1980 – $25,137.86; 1981 – $20,037.85.

Según la prueba ante nos, surge que la opinión unánime fue a los efectos de que la condición mental que padece el recurrido, señor Díaz Ortiz, no guarda relación causal alguna con su empleo como vendedor.

No obstante la decisión del F.S.E. que le denegó los beneficios de compensación que la ley provee, la Comisión Industrial —mediante Resolución de 8 de marzo de 1988— la revocó y ordenó que se le otorgara al recurrido la íntegra protección de la ley.

En síntesis, concluyó la Comisión Industrial que el padecimiento mental que sufría el recurrido era consecuencia de los ajustes económicos que hizo la compañía para la cual trabajaba, sustentando así la causalidad necesaria para conceder los beneficios de la ley.

No conforme, el F.S.E. solicitó oportunamente reconsideración, la cual fue declarada no ha lugar mediante resolución notificada en 9 de mayo de 1988.

Por todo esto, decidió el F.S.E. acudir ante este Tribunal mediante solicitud de *certiorari*. Señaló como error lo siguiente:

Cometió error de derecho la Honorable Comisión Industrial al resolver que la condición emocional que padece el recurrido es compensable bajo nuestra Ley de Compensaciones por Accidentes del Trabajo, [*supra*,] sin prueba alguna suficiente en derecho que justifique tal conclusión, contrario a lo establecido por este Honorable Tribunal Supremo en el caso de [*Morell v. F.S.E.*], 110 D.P.R. 709 (1981). Solicitud de revisión de 24 de mayo de 1988, pág. 3.

I

Para poder disponer adecuadamente de la controversia legal planteada ante nosotros, es necesario que examinemos básicamente dos (2) aspectos distintos de la controversia. Primero, hemos de analizar si existía relación causal entre la enfermedad o padecimiento que se alegaba y el empleo, para así tener derecho a obtener los beneficios que confiere la ley del F.S.E. De concluir negativamente tendremos que analizar, además, si la Comisión Industrial está facultada para resolver una controversia en determinada manera sin tener prueba suficiente que justifique en

derecho la solución, en contravención, en este caso, a lo resuelto por el F.S.E.

## II

■ El Art. 2 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 2, establece los requisitos para que se pueda considerar que un obrero ha sufrido un accidente del trabajo y, por lo tanto, sea acreedor a recibir los beneficios que la ley le concede.(3) Exige esta sección que la condición o lesión del obrero sobrevenga como resultado de un acto o función inherente al trabajo, que haya ocurrido en el curso de éste y como consecuencia del mismo. Si falta cualesquiera de estos tres (3) requisitos, el accidente será no compensable. *Montaner, Admor. v. Comisión Industrial*, 53 D.P.R. 197 (1938).

■ En las llamadas condiciones emocionales, como en la que ahora nos ocupa, se ha resuelto que "serán compensables . . . aquellas presentes en el caso de una persona acogida a los beneficios de dicho estatuto cuando, además de la necesaria relación causal entre la condición y el empleo, dicha condición origina por sí misma una incapacidad para el trabajo o agrava una incapacidad existente, [debiendo] probarse de manera convincente mediante prueba pericial basada en exámenes psiquiátricos adecuados". Véanse: *Resto Casillas v. Colón González*, 112 D.P.R. 644 (1982); *Morell v. F.S.E.*, 110 D.P.R. 709 (1981).

Además de la relación causal es necesario, por lo tanto, probar que está incapacitado para poder desempeñar las funciones que su trabajo requiere. De acuerdo con la prueba presentada, no surge

---

(3) En su porción pertinente, el referido artículo dispone:

"Las disposiciones de este Capítulo serán aplicables a todos los obreros y empleados que trabajen para los patronos a quienes se refiere el párrafo siguiente, que sufran lesiones o se inutilicen, o que pierdan la vida *por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste, y como consecuencia del mismo o por enfermedades o muertes derivadas de la ocupación,* según se especifican en la sección siguiente. Se exceptúan expresamente aquellos obreros y empleados cuya labor sea de carácter accidental o causal y no esté comprendida dentro del negocio, industria, profesión u ocupación de su patrono y además aquellas personas que trabajen en sus domicilios." (Énfasis suplido.) 11 L.P.R.A. sec. 2.

duda alguna de que el aquí recurrido está incapacitado para realizar su trabajo. La única duda reside en si existe la relación causal necesaria para sostener el derecho a compensación.

Al estudiar la prueba resulta claro que todos los psiquiatras que examinaron al aquí recurrido en representación del asegurador declararon que la condición esquizo-afectiva que se le diagnosticó al señor Díaz Ortiz no guarda relación causal con la situación laboral a que estuvo sujeto. La Comisión Industrial tuvo ante sí los testimonios de varios psiquiatras quienes concurrían tanto en el diagnóstico de la condición mental como en la falta de relación causal con su trabajo.

Declararon los galenos, en síntesis, que el recurrido padecía de una condición patológica congénita(4) que con el pasar del tiempo se agravó y que no podían concluir que su salud mental se deterioró como resultado de los cambios habidos en su empleo.

Al fundamentarse en esta prueba científica desfilada ante sí, el F.S.E. estimó concluir que al no cumplirse con el requisito de causalidad, no procedía la compensación que autoriza la ley.

■ Resulta necesario mencionar en nuestro análisis que reconocemos el hecho de que de acuerdo con nuestro ordenamiento, una condición preexistente es compensable (*Morell v. F.S.E.*, supra) cuando la razón de que ésta se agravara fue el resultado de su empleo. En nuestro caso, el hecho es que no se pudo siquiera probar, de acuerdo con el análisis realizado de la

---

(4) De acuerdo con el testimonio del Dr. Rafael Nogueras, psiquiatra asesor del Fondo del Seguro del Estado, la condición del recurrido se debía a un síndrome cerebral orgánico.

"El cuadro ciertamente es uno definitivamente bien severo, bien marcado. Ciertamente entiende que el diagnóstico del Dr. Infanzón de una neurosis depresiva, se queda corto en términos del grado de severidad que tiene la condición. En base a lo que se ha apuntado aquí, entiende que aparentemente este es un cuadro en el que empieza el lesionado a sufrir cambios de tipo orgánico cerebral con pérdida de la memoria, desorientado y que debido a estos cambios que la persona observa en su deterioro intelectual, eso motiva el surgimiento de lo que entiende es un síndrome orgánico afectivo, o sea, una condición depresiva." Informe de la Comisión Industrial de Puerto Rico, pág. 7, obrante en autos.

prueba en autos, que la condición del recurrido se agravó como consecuencia de los alegados cambios en su empleo.(5)

### III

Una vez concluido que no existe relación causal entre la condición emocional del recurrido y su empleo, pasamos a discutir el segundo aspecto que nos planteamos y que refleja la médula del error señalado.

■ ¿Puede la Comisión Industrial concluir que procede compensar la condición emocional de un lesionado sin prueba alguna suficiente en derecho que justifique tal conclusión? Debemos concluir que no es posible.

■ En pasadas ocasiones nos hemos expresado al efecto de que "no sostendrá el Tribunal Supremo una decisión basada en prueba pericial 'vaga, superficial e imprecisa' y que rechazaremos toda prueba que equivalga a especulación o conjetura basada en hechos subsidiarios que no sostengan adecuadamente las conclusiones a que llegan". *Morell v. F.S.E.*, supra, pág. 714, citando a *Alonso García v. Comisión Industrial*, 103 D.P.R. 712, 715 (1975).

■ La Comisión Industrial, luego de examinar toda la prueba presentada ante sí, decide utilizar unos fundamentos que carecen de certeza científica y jurídica y concluye que el señor Díaz Ortiz tenía derecho a la compensación íntegra que le provee la ley. Adoptan esta decisión fundamentados en el supuesto de que

---

(5) De acuerdo con el testimonio y las declaraciones del Dr. Luis Raúl Alfaro, psiquiatra asesor de la Comisión Industrial:

"Ha querido transmitir que efectivamente se produjeron unos cambios, pero que no necesariamente esos cambios tienen que ser interpretados como presiones laborales, que es lo que habría que determinar para poder fundamentar una relación causal, sino que puede ser una fantasía o unas ideas desarrolladas por el lesionado de esos cambios. *Si se fueran a relacionar, todas las condiciones que surgen como producto de una elaboración mental de un obrero, pues tendría que relacionar todos los casos*. Tendría que probarse de forma categórica y fehaciente [de] que los cambios que se produjeron en esa compañía fueron de tal naturaleza o envergadura, que fueron detrimentales para la salud emocional del lesionado, pero de manera objetiva." (Énfasis suplido.) Véase Informe de la Comisión Industrial de Puerto Rico, pág. 6.

la ley debe interpretarse de manera liberal, de modo que se favorezca al empleado.(6) Ello es así, pero la liberalidad tiene que estar fundamentada en los hechos particulares de cada caso; no se puede ser liberal en un vacío.

◼ Recordemos que si no podemos sostener una decisión fundamentada en prueba pericial imprecisa y vaga, por analogía y *a contrario sensu* debemos entender que si se presenta prueba pericial precisa, clara y contundente, es necesario resolver de acuerdo con ésta. La Comisión Industrial erró al no sostener la decisión del F.S.E. que estuvo fundada en prueba pericial clara y precisa. Utilizó para ello fundamentos inciertos y de poco peso jurídico para sustentar la validez legal de su decisión.

◼ Este Tribunal, en circunstancias ordinarias, no alterará las conclusiones de la Comisión Industrial que estén sostenidas por la prueba pericial en el caso, en ausencia de razón alguna que justifique intervenir con la apreciación hecha. *González Santiago v. F.S.E.*, 118 D.P.R. 11 (1986). Pero "este Tribunal en ejercicio de su facultad revisora tiene amplia discreción en la apreciación de la prueba pericial médica, pudiendo aun adoptar su propio criterio en la apreciación o evaluación de la misma". *Alonso García v. Comisión Industrial*, 103 D.P.R. 712, 714–715 (1975), donde se citan *Valldejuli v. A.A.A.*, 99 D.P.R. 917 (1971); *Prieto v. Maryland Casualty Co.*, 98 D.P.R. 594 (1970); *Concepción Guzmán v. A.F.F.*, 92 D.P.R. 488 (1965), y *E.L.A. v. Fonalledas Córdova*, 84 D.P.R. 573 (1962).

Es por esto y por lo antes expuesto que *procede revocar la decisión de la Comisión Industrial, que determina que la*

---

(6) El Art. 2 de la Ley de Compensaciones por Accidentes del Trabajo, dispone en su parte pertinente:

"Este Capítulo por ser de carácter remedial se interpretará liberalmente, y *cualquier duda razonable* que en su aplicación surgiere en cuanto a la existencia de relación causal entre el trabajo u ocupación del obrero o empleado y la lesión, incapacidad o muerte, o el carácter ocupacional de una enfermedad, deberá resolverse a favor del obrero o empleado, o sus beneficiarios." (Énfasis suplido.) 11 L.P.R.A. sec. 2.

*condición emocional que presenta el lesionado guarda relación causal con su trabajo.*

El Juez Presidente Señor Pons Núñez y el Juez Asociado Señor Negrón García no intervinieron.