LUIS A. DÍAZ RIVERA, recurrente, *v.* POLICÍA DE PUERTO RICO, FONDO DEL SEGURO DEL ESTADO, recurridos.

*Número:* AT-95-45          *Resuelto:* 26 de marzo de 1996

---

*Eladio Cartagena Colón*, abogado del recurrente; *Carmen Candelaria*, abogada de los recurridos.

— o —

Opinión disidente emitida por el Juez Asociado Señor Corrada Del Río.

El Administrador del Fondo del Seguro del Estado le negó una compensación al policía Luis A. Díaz Rivera por una condición emocional sufrida a consecuencia de haber presenciado el suicidio de otro compañero mientras se encontraba en funciones de su empleo. La Comisión Industrial confirmó tal determinación tras concluir que el accidente ocurrido no era un riesgo inherente al empleo de un policía y que, por lo tanto, no podía ser considerado como un accidente laboral dentro de lo que dispone la Ley del Sistema de Compensaciones por Accidentes del Trabajo. De esta determinación recurre el obrero lesionado para alegar que erró la Comisión Industrial al concluir que la condición sufrida no resulta *compensable*.

Para poder determinar la *compensabilidad* de la condición emocional sufrida por el obrero recurrente nos corresponde resolver, en primer lugar, si ella está *cubierta* por las disposiciones de la Ley del Sistema de Compensaciones por Accidentes del Trabajo. Esto último es precisamente lo que la sentencia de este Tribunal resuelve en la afirmativa y, en consecuencia, revoca la resolución recurrida y devuelve el caso al foro administrativo para procedimientos ulteriores.

No obstante, luego de analizar detenidamente los autos ante nos, así como las comparecencias de las partes, al amparo de las disposiciones de la Ley del Sistema de Compensaciones por Accidentes del Trabajo y en armonía con la jurisprudencia aplicable, no podemos suscribir la posición asumida por la mayoría de este Tribunal.

Un examen de la situación fáctica del caso de autos demuestra que, aunque el accidente ocurrido es verdaderamente trágico y lamentable, se encuentran ausentes los requisitos indispensables y fundamentales sobre la causalidad con el empleo. De manera que no es posible concluir que la condición sufrida por el obrero recurrido es el producto de un accidente del empleo *cubierto* por la legislación sobre compensación por accidentes del trabajo. Es por ello que disentimos. Veamos.

## I

El Art. 2 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 2, establece que la protección que ofrece dicha ley se extenderá a todos los obreros y empleados "que sufran lesiones o se inutilicen, o que pierdan la vida por accidentes que provengan de cualquier *acto o función inherente a su trabajo o empleo* y que ocurran en el curso de éste, y como consecuencia del mismo o por enfermedades o muerte derivadas de la ocupación". (Énfasis suplido.)

Al amparo del artículo aludido, reiteradamente hemos sostenido que a los fines de determinar si una muerte, lesión o enfermedad es producto de un accidente del trabajo, que esté *cubierto* por la Ley del Sistema de Compensaciones por Accidentes del Trabajo, deberá considerarse si se cumplen los requisitos siguientes: (1) que el accidente provenga de cualquier acto o función del obrero; (2) sea inherente al trabajo o empleo que desempeña el obrero; (3) ocu-

rra en el curso del trabajo, y (4) que sea consecuencia de éste. *Pacheco Pietri y otros v. E.L.A. y otros*, 133 D.P.R. 907 (1993); *Díaz Ortiz v. F.S.E.*, 126 D.P.R. 32 (1990); *Santiago Hodge v. Parke Davis Co.*, 126 D.P.R. 1 (1990); *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485 (1985); *Admor., F.S.E. v. Comisión Industrial*, 101 D.P.R. 56 (1973); *Cardona v. Comisión Industrial*, 56 D.P.R. 847 (1940); *Montaner, Admor. v. Comisión Industrial*, 53 D.P.R. 197 (1938). De estar ausente cualquiera de estos requisitos, la reclamación no estará cubierta por la ley. *Cardona v. Comisión Industrial*, supra; *Montaner, Admor. v. Comisión Industrial*, supra.

Como podrá observarse, el requisito concerniente a que el accidente, la lesión, o la enfermedad ocurra "en el curso del empleo" se refiere a los factores de tiempo y lugar. Es decir que, por lo general, para que una lesión esté cubierta por la ley, ésta deberá ocurrir dentro de los límites de tiempo y espacio en relación con el empleo. *Gallart, Admor. v. Comisión Industrial*, 87 D.P.R. 17 (1962).

Sin embargo, los restantes requisitos van dirigidos a establecer que la cubierta de la ley se extenderá a aquellas lesiones que tengan un nexo causal con el trabajo desempeñado por el obrero. En otras palabras, la lesión sufrida, o el accidente que ocasione tal lesión, deberán surgir de una actuación a la cual el obrero queda sujeto *como consecuencia de las responsabilidades y funciones inherentes a la naturaleza de su trabajo u ocupación.*

Sobre el particular, en *Gallart, Admor. v. Comisión Industrial*, supra, pág. 28, citando a *Nelson v. City of Saint Paul*, 81 N.W.2d 272 (1957), expresamos que

*[L]a relación causal requerida ... existe si el empleo, por razón de su naturaleza, obligación o incidentes puede razonablemente determinarse que es la fuente del riesgo que produce la lesión. La relación causal como tal fuente surge ... si el empleo, como parte de las condiciones del trabajo peculiarmente expone al empleado a peligros externos por virtud de lo cual queda sujeto*

> *a riesgos distintos o mayores que los que prevalecerían si aquél estuviese atendiendo sus asuntos personales ordinarios.*
> (Énfasis en el original.)

Aplicando la normativa antes expuesta al caso que ahora nos ocupa, no es posible concluir, como lo hace la mayoría en su sentencia,[1] que la condición sufrida por el obrero recurrente *"debe estar* cubierta por la ley". No puede razonablemente concluirse que el hecho de que otro compañero haya tomado un arma y se haya suicidado en presencia del obrero lesionado sea un evento incidental o tenga origen en la naturaleza del empleo de un policía. Como bien sostuvo la Comisión Industrial en su Resolución (en reconsideración), ello tampoco puede constituir un riesgo al que está expuesto un empleado por la naturaleza de su empleo propiamente.

El riesgo de presenciar el suicidio de un compañero de trabajo es uno al cual está potencialmente expuesta cualquier persona, sin que por ello surja un nexo causal entre el empleo y el impacto emocional que pueda sufrir el empleado al presenciar tales hechos.

En consecuencia, resulta incuestionable que no existe una inferencia razonable de nexo causal. Razón por la cual la condición referida no puede estar cubierta por la ley y, por consiguiente, el obrero no puede ser compensado por ésta.

Para sustentar su posición, la mayoría de este Tribunal expresa en su sentencia que "[e]l incidente en cuestión *ocurrió mientras el policía estaba en funciones de su empleo, fue presenciado por él y se demostró que le produjo una condición emocional que le impidió continuar trabajando"*. (Énfasis en el original.) Sentencia, pág. 484. No obstante, tal afirmación sin más no demuestra la existencia del requisito indispensable de causalidad. El hecho de que el accidente ocurriera "mientras el policía estaba en funciones

---

[1] Sentencia, pág. 484.

de su empleo", sólo demuestra que dicho evento ocurrió en el "curso del empleo"; es decir, establece los factores de tiempo y lugar, mas no los de causalidad.

Más aún, las expresiones referentes a que dicho accidente "fue presenciado por él y se demostró que le produjo una condición emocional" (énfasis suprimido) (Sentencia, pág. 484), y el reconocimiento expreso del Fondo del Seguro del Estado[2] de que tal condición se produjo como consecuencia del incidente referido, tampoco establecen el requerido nexo causal. No dudamos que presenciar el suicidio de otro ser humano, particularmente de un compañero de trabajo, pueda tener una repercusión en la salud mental de cualquier persona. Tampoco cuestionamos que así haya ocurrido en el caso de autos, sin embargo, ello por sí solo no justifica considerar la condición sufrida como una cobijada por la ley.

Ciertamente, una condición emocional podría estar comprendida dentro de las lesiones para las cuales la ley provee compensación, si ella limita la capacidad del obrero para trabajar o agrava una incapacidad funcional ya existente.[3] Sin embargo, lógicamente el obrero no tendrá derecho a recibir tal beneficio si la condición sufrida no proviene de un accidente que cae dentro de la cubierta fundamental de la ley. Es por esto que hemos expresado que "[a]l analizar las disposiciones pertinentes de la ley[,] ... hay que diferenciar entre *el ámbito de la cubierta,* o sea, los 'accidentes que pro[vienen] de cualquier acto o función inherente [al] trabajo o empleo y que ocurran en el curso de éste, y como consecuencia del mismo', Art. 2, *supra*, y *la cubierta en sí*, o sea, si los daños que provienen de dicho accidente son o no compensables, total o parcialmente, por

---

[2] Véase Resolución (en reconsideración) de la Comisión Industrial de 29 de septiembre de 1994.

[3] Véanse: *Díaz Ortiz v. F.S.E.*, 126 D.P.R. 32 (1990); *Resto Casillas v. Colón González*, 112 D.P.R. 644 (1982); *Morell v. F.S.E.*, 110 D.P.R. 709 (1981).

el Fondo". (Énfasis en el original.) *Pacheco Pietri y otros v. E.L.A. y otros*, supra, pág. 920.

Por último, si bien es cierto que siendo la Ley del Sistema de Compensaciones por Accidentes del Trabajo un estatuto con fines remediales, sus disposiciones deben ser interpretadas liberalmente y cualquier "duda razonable" en cuanto a la existencia de relación causal deberá resolverse a favor del obrero, 11 L.P.R.A. sec. 2; no es menos cierto que ello debe ser a base del punto de vista del sentido común del hombre promedio. Cuando el legislador dispuso el concepto de "duda razonable" se refería a una duda con fundamentos de razón, no a una duda meramente caprichosa. *Vda. de Meléndez v. Comisión Industrial*, 85 D.P.R. 58, 75 (1962). Recordemos, además, que "[e]l Fondo del Seguro del Estado no es un asegurador absoluto de la salud o de la vida de los obreros por toda clase de accidentes que puedan éstos sufrir". *Admor., F.S.E. v. Comisión Industrial*, supra, pág. 58.

Por todo lo expuesto anteriormente, confirmaríamos la resolución recurrida.