# 2006 DTA 119

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL I**

RAFAEL VAZQUEZ CALDERON
Lesionado-Recurrido

HILLS CONSTRUCTION CORP.
Patrono

v.

CORPORACION FONDO DEL SEGURO DEL ESTADO
Asegurador-Recurrente

COMISION INDUSTRIAL DE PR
Agencia-Recurrida

Núm. KLRA-2006-00538

San Juan, Puerto Rico, a 28 de septiembre de 2006

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz,
y los Jueces Ramírez Nazario y Piñero González

Ramírez Nazario, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Acude ante nos el Administrador de la Corporación del Fondo del Seguro del Estado (en adelante la CFSE) mediante Recurso de Revisión Administrativa y cuestiona la resolución emitida por la Comisión Industrial el 20 de junio de 2006 notificada a las partes el 27 de junio de 2006 (Resolución en Reconsideración). En ésta se deja en pleno vigor la revocación a la decisión de la CFSE, donde se había resuelto que el accidente sufrido por el señor Rafael Vázquez Calderón (en adelante el señor Vázquez o el recurrido) no estaba cubierto bajo la Ley del Sistema de Compensaciones por Accidentes del Trabajo. El señor Vázquez presentó su alegato en oposición al recurso de revisión presentado por la CFSE.

Analizados los escritos de las partes así como el derecho aplicable, se confirma la resolución recurrida.

### I

El señor Vázquez se desempeñaba como mecánico de la constructora Hills Construction Corp. El 2 de mayo de 2003 se suscitó el siguiente incidente entre el señor Vázquez y otro empleado del patrono conocido como Javier Ortiz (en adelante el señor Ortiz): mientras el señor Vázquez se encontraba montando unos cables en el campo, habían otros compañeros que estaban trabajando con un motor desde horas de la mañana. Su supervisor le indicó que ayudara a sus compañeros a sacar el motor, a lo que el señor Vázquez no tuvo reparo. Siguiendo las directrices impartidas por su supervisor, se dirigió al área donde estaban trabajando con el motor. En el momento que llega a esta área, el señor Ortiz le dijo unas palabras soeces, le indicó que *"es mejor que te vayas para allá"* y lo amenazó de muerte. Los demás muchachos intervinieron y *"lo echaron para un lado"*. Posteriormente, a la hora de salida (4:00pm) mientras el señor Vázquez esperaba que lo fueran a recoger a su lugar de trabajo, salió por el portón una *"guagua"* manejada por el señor Ortiz a alta velocidad y acto seguido lanzó la misma sobre la persona del recurrido. Posteriormente, el señor Ortiz lanzó su guagua sobre el señor Vázquez en tres ocasiones más. ■

Luego del incidente antes descrito, el 6 de mayo de 2003, el señor Vázquez se reportó a la CFSE. En esta fecha presentó una *"Declaración Voluntaria del Lesionado"*, en la cual describió el incidente ocurrido el 2 de mayo de 2006. En el área del formulario designada para la descripción del incidente ocurrido, se consignó lo siguiente: *"Discusión con compañero de trabajo el cual lo amenaza de muerte e intenta después arrollarlo con su vehículo (anteriormente a los hechos habían tenido otras discusiones). Tiene miedo de su seguridad y sufrió crisis nervios y agresivo [sic]."* ■

Ese mismo día se le realizó una *"Entrevista Inicial en la Sala de Cuidado Inmediato"*. En la misma se indica bajo el inciso de *"Queja Principal"* lo siguiente: *"Refiere que en su área de trabajo por rencillas*

*personales con compañero de trabajo, éste lo amenaza de muerte y con el vehículo privado ha intentado 3 veces arrollarlo. Teme por su seguridad. Se siente nervioso, ansioso, agresivo, gritón, llanto continuo, insomnio, dolor de pecho."* ■

Igualmente, el 6 de mayo de 2003, se le realizó al señor Vázquez una evaluación psicológica por el Dr. Félix Álamo Hernández en la CFSE. Este rindió un informe sobre la referida evaluación, en el cual indica que el día del incidente el señor Vázquez y el señor Ortiz tuvieron una discusión por una situación personal. Se informa que el señor Ortiz amenazó de muerte al señor Vázquez y que posteriormente a la hora de salida, se suscita el incidente en el cual el señor Ortiz trató de arrollar al señor Vázquez. Igualmente se indica que anterior a los hechos, ambos empleados habían tenido otras discusiones y que ellos *"bromeaban y se tiraban indirectas"*. Según lo expresado por el señor Vázquez, no dormía bien y se sentía ansioso. La esposa del señor Vázquez indicó que su esposo siempre ha sido una persona nerviosa. Luego de examinado, se recomendó su hospitalización en el MEPSI Center. El diagnóstico final fue uno de depresión mayor con rasgos sicóticos. Además, se refirió el caso a un trabajador social, a un Oficial Investigador y a una evaluación por la psiquiatra Dra. Bicchi. ■ En el Estudio Social Psiquiátrico, hecho por la trabajadora social, se indicó que el señor Vázquez expresó estar afectado emocionalmente desde el día del incidente con su compañero. ■

El 1 de octubre de 2003, la CFSE emitió y notificó la *"Decisión del Administrador Sobre Tratamiento Médico"*. En la misma se indicó lo siguiente: *"Luego de evaluado el caso, se determina darlo de alta de tratamiento médico efectivo en 1 de octubre de 2003. La decisión final del Administrador sobre no relación será notificada oportunamente. El lesionado podrá continuar tratamiento médico en facilidades fuera del Fondo del Seguro del Estado."*

El 8 de octubre de 2003, el señor Vázquez presentó una apelación ante la Comisión Industrial. En la misma cuestionó la determinación del Administrador de la CFSE notificada el 1 de octubre de 2003 y solicitó la celebración de una vista pública.

El 21 de octubre de 2003 notificada el 13 de noviembre de 2003, la CFSE emitió la *"Decisión del Administrador sobre Condición Emocional Primaria"*. En la misma se determinó que *"de acuerdo con el Informe Médico sobre Determinación de Relación Causal sobre Condición Emocional; se diagnosticó: Desorden Depresivo Mayor, no relacionado. Se concluyó que "vistos los hechos y examinada la prueba, se resuelve que la alegada condición emocional diagnosticada al peticionario no ha sido relacionada por los médicos del Asegurador. Se ordena el cierre y archivo del caso respecto a la misma."* ■

El 7 de enero de 2004, se celebró una *"vista médica"* ante la Comisión Industrial. En la misma, se refirió el caso a un siquiatra de la Comisión Industrial para evaluación y recomendaciones sobre relación causal. El 7 de abril de 2005, el Dr. Ramón Fortuño (en adelante el Dr. Fortuño) examinó al señor Vázquez. El Dr. Fortuño concluyó que el recurrido tenía afecto restricto, el ánimo que prevaleció durante la entrevista era de irritabilidad y que el pensamiento giró en torno a la ansiedad y preocupación por el evento ocurrido. Diagnosticó que el cuadro presentado por el señor Vázquez era compatible con un trastorno adaptativo mixto, donde se encuentran características tanto de ansiedad como de depresión. Finalmente concluyó que el incidente sufrido por el señor Vázquez fue de suficiente impacto para ocasionarle un trastorno adaptativo y recomienda que se le relacione su condición con el evento traumático del incidente. ■

Así las cosas, el 14 de febrero de 2006 se celebró una vista pública ante la Comisión Industrial. A la misma comparecieron las partes, así como la Dra. Nitza Vadi, perito de la CFSE, y el Dr. Ramón Fortuño asesor médico de la Comisión Industrial. Luego de celebrada la vista, la Oficial Examinadora sometió su informe para la consideración de la Comisión Industrial. La decisión recomendada por la Oficial Examinadora fue revocar la decisión del Administrador de la CFSE emitida y notificada el 1 de octubre de 2003. Recomendó que se determinara que el accidente sufrido por el señor Vázquez está cubierto bajo la Ley Núm. 45 de 18 de abril de

1935, según enmendada, conocida como Ley del Sistema de Compensaciones por Accidentes del Trabajo. Además, recomendó determinar que la condición emocional de trastorno adaptativo sufrida por el señor Vázquez, guarda nexo de causalidad con el trabajo.

El 17 de febrero de 2006 notificada el 9 de marzo de 2006, la Comisión Industrial emitió su Resolución. En ésta indicó que *"examinados los autos, la evidencia que consta en los mismos, así como vistas las dispocisiones de la ley y la jurisprudencia aplicable, aceptaba y hacía formar parte de la Resolución el Informe de la Oficial Examinadora."* Por tal razón, revocó la decisión del Administrador de la CFSE y determinó que el accidente sufrido por el señor Vázquez estaba cubierto por la Ley de Compensaciones por Accidentes de Trabajo, según enmendada. Además determinó que la condición emocional de trastorno adaptativo guarda nexo de causalidad con el trabajo del señor Vázquez. En consecuencia, ordenó al Asegurador (CFSE) a brindarle al recurrido la íntegra protección de la ley.

A raíz de la decisión antes mencionada, el 31 de marzo de 2006, la CFSE presentó ante la Comisión Industrial una moción de reconsideración. En ésta alegó que no estaba de acuerdo con la Resolución emitida, puesto que la misma no contenía determinaciones de hechos ni conclusiones de derecho, esto en contravención con lo establecido por la ley y la jurisprudencia. Además alegó que la lesión sufrida no cumplía con los siguientes requisitos establecidos en el Artículo 2 de la Ley de Compensaciones por Accidentes del Trabajo: a) la lesión debe ser el resultado de un acto o función inherente al empleo; b) haber ocurrido en el curso del empleo y c) ocurrir como consecuencia del empleo. Finalmente indicó que *"en el caso de autos, el accidente reportado no fue causado a consecuencia del empleo, sino por el acto intencional y delictivo de un compañero de trabajo del lesionado."*

El 20 de junio de 2006 notificada el 27 de junio de 2006, la Comisión Industrial emitió una Resolución en Reconsideración. En la misma se incluyeron las determinaciones de hechos, así como conclusiones de derecho correspondientes. Finalmente se concluyó lo siguiente: *"Habiendo revisado nuevamente el expediente del caso, y tomando en consideración todas las circunstancias y elementos de juicio presentes, nos sostenemos en nuestra previa determinación de relación causal entre el accidente reportado y la condición del reclamante, que justifica un fallo compensatorio."* Por tal razón, se declaró no ha lugar la moción de reconsideración presentada.

Inconforme con dicha determinación, el 21 de julio de 2006, la CFSE presentó ante este Tribunal de Apelaciones una Solicitud de Revisión. El 1 de septiembre de 2006, el señor Vázquez presentó el correspondiente alegato en oposición.

**II**

La CFSE señala como único error que:

*"Incidió la Honorable Comisión Industrial en error de derecho al determinar que la condición emocional que sufre el lesionado, como resultado de la agresión intencional de otro compañero de trabajo, constituye un accidente laboral compensable, en contravención a la Ley de Compensaciones por Accidentes del Trabajo y la jurisprudencia aplicable."*

**III**

**(A) Deferencia a las decisiones administrativas**

Reafirmó recientemente el Tribunal Supremo en el caso *Empresas Toledo v. Junta de Revisión y Apelación de Subastas de la Autoridad de Edificios Públicos,* **2006 J.T.S. 147**, que sabido es que las determinaciones de hecho de organismos y de agencias administrativas públicas tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para

derrotarlas. Véase además, *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.,* 133 D.P.R. 521, 533 (1993). Los tribunales apelativos han de conceder una deferencia a las decisiones administrativas, debido a que éstas cuentan con vasta experiencia y los conocimientos especializados en los asuntos que le han sido encomendados. *Empresas Toledo v. Junta de Revisión y Apelación de Subastas de la Autoridad de Edificios Públicos, supra*; Pacheco *Torres v. Estancias de Yauco, S.E.,* **2003 J.T.S. 150.**

De acuerdo con la Sección 4.5 de la L.P.A.U., 3 L.P.R.A. § 2175, según ha sido interpretado previamente por el Tribunal Supremo, la revisión judicial de una actuación administrativa debe limitarse a evaluar la razonabilidad de la decisión recurrida, la cual deberá ser sostenida a menos que se demuestre que la misma es arbitraria o caprichosa. *Empresas Toledo v. Junta de Revisión y Apelación de Subastas de la Autoridad de Edificios Públicos, supra*; *Cruz Negrón v. Administración de Corrección,* **2005 J.T.S. 39**; *Ramírez v. Depto. de Salud,* 147 D.P.R. 901 (1999).

El peso de la prueba de demostrar lo anterior recae en el demandante y si éste no puede demostrar una ausencia de factores racionales o razonables para la determinación de la agencia, deberá demostrar un perjuicio o una violación a los estatutos o reglamentos aplicables. *Empresas Toledo v. Junta de Revisión y Apelación de Subastas de la Autoridad de Edificios Públicos, supra,* citando a *DeMat Air, Inc. v. U.S.,* 2 Cl. Ct. 202 (1983). (*"These standards provide that the court will uphold an agency's decision unless plaintiff shows that it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."* 5 U.S.C. sec. 706(2) (A); 28 U.S.C. sec. 1491(b) (4)).

En cuanto a la evidencia sustancial, ésta según ha sido definida es *"aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión."* *Misión Ind. P.R. v. J.P.,* 146 D.P.R. 68 (1998); *Hilton Hotels v. Junta de Salario Mínimo,* 74 D.P.R. 670, 687 (1953). Por ello, la parte afectada por una determinación de hecho de una agencia debe, en primer lugar, *"demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración."* *Ramírez v. Depto. de Salud,* 147 D.P.R. 901, 905 (1999); *Misión Ind. P.R. v. J.P., supra.* Si la parte afectada no demuestra la existencia de otra prueba, las determinaciones de hechos de una agencia deben ser sostenidas por el tribunal revisor. *Ramírez Rivera v. Depto. de Salud, supra.* Esto persigue evitar que los tribunales sustituyan el criterio de la agencia por el suyo propio.

Conforme al criterio de razonabilidad y deferencia, como ya se ha dicho, los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo, *"si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad".* *Otero Mercado v. Toyota de Puerto Rico,* **2005 J.T.S. 13**; *Torres v. Estancias de Yauco,* **2003 J.T.S. 150.**; *Domínguez Talavera v. Caguas Expressway Motors, Inc.,* 148 D.P.R. 387, 397 (1991).

A diferencia de las determinaciones de hechos, las conclusiones de derecho de la agencia pueden ser revisadas en todos sus aspectos por el tribunal. 3 L.P.R.A. sec. 2175 (1992). Esto no significa que los tribunales puedan descartar liberalmente las conclusiones de derecho de una agencia administrativa. *P.R.T.C v. J. Reg. Tel. de P.R.,* **2000 J.T.S. 98.** Por el contrario, los tribunales deben brindar deferencia a las interpretaciones que las agencias administrativas efectúan con relación a la ley cuya administración le fue encomendada por la legislatura, ya que en esos casos se presume que la agencia posee un conocimiento especializado en aquellos asuntos que le fueron encomendados. *Reyes Salcedo v. Policía de P.R., supra,* págs. 109-110. Ha expresado nuestro Tribunal Supremo que dicha deferencia descansa en que los organismos administrativos *"cuentan con una basta experiencia y conocimiento (expertise) en relación con la materia con la que bregan día tras día".* *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 D.P.R. 425, 436 (1997); *M&V Orthodontics v. Negdo. Seg. Empleo,* 115 D.P.R. 183-189 (1984).

En cuanto a la apreciación de la prueba, es nuestra obligación respetar la apreciación de la agencia en cuanto a la credibilidad de los testigos. *Hilton Hotels Internationals v. Junta de Salario Mínimo, supra.* No debemos perder de vista que la determinación en cuanto al testimonio y la deducción de hechos establecidos en la vista le corresponde al organismo adjudicador, por lo que este tribunal no debe pasar sobre la credibilidad del testigo o repesar la evidencia, sino que se limitará a tomar el récord en su totalidad, para determinar si contiene evidencia sustancial que sostenga las conclusiones de la agencia. *J.R.T. v. Línea Suprema Inc.*, 89 D.P.R. 840 (1964).

## (B) Ley del Sistema de Compensaciones por Accidentes del Trabajo

La Ley del Sistema de Compensaciones por Accidentes del Trabajo es un estatuto de carácter remedial que pretende consagrar ciertas protecciones y beneficios al obrero que sufre un accidente, lesión o enfermedad en el curso del trabajo. *Lebrón v. ELA,* **2001 J.T.S. 150**; *Cátala Meléndez v. Fondo de Seguro del Estado,* **99 J.T.S. 61**; *Pacheco Pietri v. E.L.A.,* 133 D.P.R. 907, 914 (1993).

Según lo establecido por el Tribunal Supremo, ▇ para que la reclamación se entienda como un accidente de trabajo, esto es en cuanto a qué constituye un accidente de trabajo conforme a la ley, se han establecido los siguientes requisitos:

*"1) provenir de cualquier acto o función del obrero;*

*2) ser inherente al trabajo o empleo que desempeña el obrero;*

*3) ocurrir en el curso del trabajo;*

*4) ser consecuencia de éste."*

Así, se ha reiterado que la protección brindada en el referido Artículo 2, *ante, "se extiende a las lesiones sufridas como consecuencia de accidentes que provengan de cualquier acto o función inherente al trabajo de un empleado u obrero, que ocurran en el curso de dicho trabajo o como consecuencia de éste". Lebrón v. ELA, supra; Ortiz Pérez v. F.S.E.,* 137 D.P.R. 367, 373 (1994); *Pacheco Pietri y otros v. E.L.A., supra; Díaz Ortiz v. F.S.E.,* 126 D.P.R. 32 (1990); *Cardona Velázquez v. Comisión Industrial,* 90 D.P.R. 257 (1964). Claro está, un accidente que reúna estos requisitos sólo será compensable bajo la Ley de Compensaciones si el accidente le produce al empleado u obrero una lesión que lo incapacita para trabajar. *Cátala Meléndez v. Fondo de Seguro del Estado, supra.*

Entonces, para poder reclamar dentro del contexto de **la Ley se requiere la existencia de un nexo causal entre la lesión, enfermedad, o muerte del obrero y su trabajo.** Por ende, el accidente sufrido por el obrero carece de protección si dicho accidente no cumple con uno de los citados requisitos, por lo que *"corresponde a la parte que solicita la compensación demostrar que el accidente sufrido está cobijado bajo la Ley de Compensaciones por Accidentes del Trabajo". Lebrón v. ELA, supra.* **Si existe relación incidental o causal entre el empleo y el accidente, la lesión se considera como que surgió del empleo, aun cuando la relación sea algo remota, y aun cuando el agente directo e inmediato de la lesión fuera extraño.** *Cordero v. Comisión Industrial, supra.*

Además, al evaluar si el accidente de trabajo es o no compensable a tenor con la Ley, se deberán considerar los siguientes factores: **(1) si es un requisito del trabajo y si se efectuó por órdenes del patrono, o si es un acto voluntario del obrero, aunque mediara una sugestión del patrono; (2) si se realiza a beneficio del patrono, o a su requerimiento; y (3) si se hace en cumplimiento de una ley o reglamentación como condición para obtener o conservar el empleo.** *Lebrón v. ELA, supra; Pacheco Pietri y otros v. E.L.A., supra.*

491

Por otro lado, el Tribunal Supremo resolvió en el caso *Odriozola v. Superior Cosmetic Distributors Corporation,* 116 D.P.R. 485 (1985), que *"en Alonso García v. Comisión Industrial, 102 D.P.R. 689, 695-699 (1974), señalamos que **no había diferencia bajo la ley entre un "accidente" y una "enfermedad". Ambas son compensables siempre y cuando se trate de una lesión inherente al trabajo o empleo concernido o que ocurra o se agrave en el curso de éste".*** Véase además, *Administrador, F.S.E v. Comisión Industrial,* 101 D.P.R. 56, 58 (1973). En esa misma línea resolvió el Tribunal Supremo en el caso de *Morell v. F.S.E.* 110 D.P.R. 709 (1981) lo siguiente: *"Para resumir, resolvemos que **para que sea compensable una condición emocional bajo la Ley de Compensaciones por Accidentes del Trabajo, debe establecerse: (1) relación causal entre la condición y un accidente o enfermedad ocupacional, (2) que la condición es de tal naturaleza que origina por sí misma una incapacidad para trabajar o agrava una incapacidad funcional existente, y (3) que la prueba para demostrar tal condición sea convincente, basada en opiniones siquiátricas que sean el resultado de exámenes adecuados."***

En cuanto a lesiones sufridas por los empleados en el trabajo respecto a agresiones de terceras personas, la Ley de Compensaciones por Accidentes del Trabajo fue enmendada. Hasta el año 1962, el Artículo 4 de la citada Ley ▆ incluia un inciso que negaba los beneficios de la compensación al obrero que sufriera una lesión, se inutilizara o muriera a consecuencia de un acto criminal de una tercera persona. *Ortiz Pérez v. F.S.E.,* 137 D. P.R. 367 (1994). En resumen, **la Ley de Compensaciones por Accidentes del Trabajo fue enmendada para proveer los beneficios de tan importante legislación social en aquellos casos en que un obrero sea agredido intencional e ilegalmente por un tercero, como muy bien podría ser un compañero de trabajo.** Basta demostrar una relación causal entre el trabajo o la ocupación del obrero y su lesión, incapacidad o muerte. *Ortiz Pérez v. F.S.E., supra.*

En el caso *Rodríguez v. Comisión Industrial,* 99 D.P.R. 121 (1970), el Tribunal Supremo aclaró que cuando no hay prueba alguna sobre el origen y motivo de la pelea, la Comisión Industrial no puede darle el beneficio de la duda a los beneficiarios del obrero fallecido. **En caso de prueba conflictiva, donde hay duda sobre el origen de la pelea, se le debe dar el beneficio de la duda y, por ende, la compensación a los beneficiarios.**

En síntesis, las normas que hasta ahora el Tribunal Supremo ha acogido respecto a las lesiones provinentes de agresiones de compañeros de empleo son: (1) **serán compensables las lesiones surgidas de una riña en el cual el empleado lesionado no fue el agresor y la pelea ocurrió por razón del trabajo;** (2) no serán compensables las lesiones del empleado agresor aun cuando la riña ocurra por razón del empleo; (3) de ordinario, **serán compensables las lesiones de todo empleado lesionado cuando exista prueba conflictiva sobre el origen de la pelea,** y (4) no serán compensables las lesiones cuando no haya prueba sobre el origen y el motivo de la pelea. *Ortiz Pérez v. F.S.E., supra.* Huelga decir que la gran mayoría de los casos que han rechazado aplicar la doctrina tratan de agresiones que han ocurrido: (1) antes de que el empleado llegue al trabajo o después de salir de este, o (2) por motivos personales. *Ortiz Pérez v. F.S.E., supra.*

Finalmente, señaló el Tribunal Supremo en el caso de *Alonso García v. Comisión Industrial, supra,* que **un tribunal debe interpretar liberalmente la Ley de Compensaciones por Accidentes del Trabajo- estatuto de carácter remedial- resolviendo toda duda a favor del obrero.** Igualmente se resolvió en el caso de *Lebrón v. ELA, supra,* que la evolución de dicha Ley ha permitido un enfoque liberal en torno a la interpretación de sus disposiciones. Esta interpretación liberal permite compensar al mayor número de empleados accidentados. Véase además: *Ortiz Pérez v. F.S.E., supra; Muñoz Hernández v. Policía de P.R.,* 134 D.P.R. 486 (1993). De manera que**, si existe duda en torno a la relación causal entre la ocupación del empleado como tal y la lesión, incapacidad o muerte del reclamante, entonces se deberá proveer el remedio correspondiente y la protección cobijada en ley.** *Lebrón v. ELA, supra.*

IV

La CFSE señala que erró la Comisión Industrial al determinar que la condición emocional sufrida por el

señor Vázquez, como resultado de una agresión intencional de otro compañero de trabajo, constituye un accidente laboral compensable. Es su contención que el accidente sufrido por el recurrido no está relacionado al empleo ya que no surge como consecuencia del empleo. Entienden que *"la condición emocional que presenta el señor Vázquez no fue causada por el tipo de labor que realizaba, sino que fue causada por los actos delictivos e intencionales de un compañero de trabajo con el cual venía confrontando problemas por una situación personal entre ambos."*

Establecen que la única causa próxima en el caso fue las rencillas y problemas personales que existían entre el recurrido y el agresor. Indican, que *"surge de todo el proceso evaluativo practicado al obrero a través de los facultativos del Fondo del Seguro del Estado y de su propio testimonio, que este venía confrontando problemas personales con su compañero de trabajo, el Sr. Javier Ortiz."*

Por otro lado, el señor Vázquez alega en su escrito de oposición que *"sin duda alguna los incidentes ocurridos el 2 de mayo de 2003 sucedieron en el curso del empleo, mientras realizaba funciones inherentes a su trabajo y a consecuencia del empleo."* Es su posición que nunca fueron probadas las rencillas personales con el señor Ortiz. Establece que la posición de la CFSE no está fundamentada y que de su testimonio durante la vista pública celebrada ante la Comisión Industrial, al cual la agencia recurrida le dio entera credibilidad, no surge ninguna alegación de problemas con el señor Ortiz. Finalmente indica que el *"asegurador interpreta "a su favor" ciertas anotaciones en varios documentos en el expediente para dar a entender que los empleados involucrados en el incidente tenían problemas personales anteriores y que lo ocurrido fue producto de dichas rencillas. En ningún documento presentado en evidencia se habla de problemas específicos entre ellos."*

Primeramente debemos refrendar la deferencia que merecen las determinaciones hechas por las agencias administrativas. Como indicáramos anteriormente, éstas deben ser respetadas mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. Nuestra intervención con una actuación administrativa, debe limitarse a evaluar la razonabilidad de la decisión recurrida. Esto a menos que se demuestre que la misma es arbitraria o caprichosa. Además según indicáramos anteriormente, conforme a este criterio de razonabilidad y deferencia si las determinaciones de hechos están sostenidas en evidencia sustancial que surja del expediente administrativo, no debemos intervenir con las mismas.

A la luz de esta doctrina, debemos examinar las contenciones de la recurrente, tomando en consideración la evidencia que obra en autos y que fue presentada en la vista pública celebrada ante la Comisión Industrial.

Examinado el expediente en su totalidad, no encontramos evidencia sustancial que sostenga la alegación de que *"la causa próxima contributiva en el caso de autos lo fue las rencillas y problemas personales que existían entre el recurrido y el agresor"*. ▮▮▮ Durante al celebración de la vista pública, la CFSE no presentó prueba sobre las supuestas rencillas y problemas personales que alegadamente existían entre el recurrido y el señor Ortiz. De varios documentos que se mencionan en el escrito de revisión, que no fueron redactados por el recurrido, se desprenden distintas alusiones a *"rencillas personales"*; a que *"este incidente entre estos obreros había ocurrido antes"*; a que *"anteriormente a los hechos habían tenido otras discusiones"*; a *"que ellos bromeaban y se tiraban indirectas"* y a una *"situación personal"*, como la causa del altercado. No obstante, en la vista en su fondo del caso ante la Comisión Industrial, no se presentó prueba de esto. Durante el transcurso de la vista, en la cual sólo testificaron el Dr. Ramón Fortuño, asesor médico de la Comisión Industrial, la Dra. Nitza Vadi, perito de la CFSE y el recurrido, no se cuestionó al señor Vázquez respecto a los alegados problemas personales. Del Informe de la Oficial Examinadora (acogido en su totalidad por la Comisión Industrial), el cual resume la prueba presentada en la vista pública celebrada, no se desprende que el incidente entre el señor Vázquez y el señor Ortiz fue provocado por las supuestas rencillas personales o por una broma o por una *"indirecta"*.

Según establecimos anteriormente, las lesiones sufridas por empleados en el trabajo producto de agresiones de terceras personas, están sujetas a ciertas normas de compensabilidad. Entre éstas se indica que, de ordinario, serán compensables las lesiones de todo empleado lesionado, cuando exista prueba conflictiva sobre el origen de la pelea. En el presente caso entendemos que está presente la norma antes citada. Sin duda, en el expediente ante nos existe prueba conflictiva respecto a cuál fue el origen del incidente entre ambos.

La realidad es que la CFSE no ha podido demostrar a este Tribunal que en el expediente se halle prueba suficiente que establezca la existencia previa de problemas personales entre los dos obreros. A falta de esta prueba no podemos concluir que entre el señor Vázquez y el señor Ortiz existían rencillas personales que provocaron el incidente ocurrido.

Por otro lado, la opinión competente de un sólo perito es suficiente para establecer la relación causal entre una condición y un accidente o enfermedad ocupacional. En opinión del doctor Fortuño, la condición que padece el señor Vázquez está relacionada con el incidente ocurrido el 2 de mayo de 2003 en su lugar de trabajo. Este galeno tuvo la oportunidad de evaluar al lesionado. Su opinión le mereció entero crédito a la Comisión Industrial. La opinión siquiátrica vertida por el doctor Fortuño fue convincente.

Surge del expediente que la doctora Nitza Vadi, psiquiatra asesora de la CFSE, nunca examinó al señor Vázquez y que su testimonio fue especulativo y contradictorio. Su declaración estuvo basada en un examen del expediente del caso. Hizo referencia a una condición emocional pre-existente en el señor Vázquez, de la cual no se presentó prueba alguna. Declaró sobre una posible relación causal por agravación de la condición pre-existente y luego descartó tal relación causal. Su testimonio no fue suficiente para controvertir el del perito asesor de la Comisión Industrial.

Examinado el expediente en su totalidad, entendemos que el señor Vázquez demostró que el accidente sufrido está cobijado bajo la Ley de Compensaciones por Accidentes del Trabajo. No podemos obviar que el derecho vigente indica que esta Ley debe interpretarse liberalmente a favor del lesionado. Este enfoque liberal permite compensar al mayor número de empleados accidentados.

Evaluada la determinación administrativa recurrida, entendemos que la misma es razonable y en ausencia de arbitrariedad o capricho, la misma debe ser sostenida. La misma está basada en evidencia sustancial que obra en el expediente.

### V

Por los fundamentos antes expuestos, se confirma la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria Interina del Tribunal.

Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 119

**1.** Véase el Informe del Oficial Examinador, Apéndice del Recurso de Revisión a la página 3.

**2.** Véase Apéndice del Recurso de Revisión a la página 13.

**3.** Véase Apéndice del Recurso de Revisión a la página 14.

**4.** Véase Apéndice del Recurso de Revisión a las páginas 16-18.

5. Véase Apéndice del Recurso de Revisión a la página 19.

6. Véase Apéndice del Recurso de Revisión a la página 12.

7. Véase Informe de la Oficial Examinadora, testimonio del Dr. Fortuño, Apéndice del Recurso de Revisión a la página 14.

8. Véase *Lebrón v. ELA, supra; Cátala Meléndez v. Fondo de Seguro del Estado, supra; Cordero v. Comisión Industrial,* 61 D.P.R. 361 (1943); *Cardona v. La Comisión Industrial,* 56 D.P.R. 847 (1940).

9. El inciso (3) del Artículo 4 de dicha ley fue eliminado por la Ley Núm. 7 de 7 de mayo de 1962 (11 L.P.R.A. sec. 5).

10. Véase Solicitud de Revisión, página 8, párrafo cuarto.