INOCENCIO AGRÓN PÉREZ, recurrido, *v.* FONDO DEL SEGURO DEL ESTADO, recurrente.

*Número:* CI-91-433        *Resuelto:* 28 de febrero de 1997

*José M. Fernández Luis*, abogado del Administrador del Fondo del Seguro del Estado, recurrente; *Mercedes M. Reyes*, de *Manuel De Jesús Mangual & Associates*, abogada del recurrido.

## SENTENCIA

El 18 de mayo de 1971 el lesionado recurrido Inocencio Agrón Pérez sufrió un accidente laboral mientras trabajaba para la compañía constructora Werl, Inc., en Mayagüez. Ese día, mientras cortaba unas varillas como parte de sus labores como reforzador, se paró en las barandas del andamio donde trabajaba y resbaló, cayendo por el hueco del elevador al piso de la tercera planta, una caída de aproximadamente diez (10) pies. Como consecuencia de la caída sufrió lesiones en la cabeza, el cuello y la espalda. Quedó inconsciente y fue llevado de inmediato al dispensario del Recinto Universitario de Mayagüez. Por dicho accidente fue referido al Fondo del Seguro del Estado (en adelante el Fondo). Fue hospitalizado en la Clínica Perea por un tiempo. Para la fecha del accidente, le tomaron radiografías que, entre otras condiciones, reflejaron cambios osteoartríticos con acortamiento del espacio intervertebral en la región cervical y espondilitis anquilosante en la región lumbar.

Luego del correspondiente tratamiento en el Fondo, fue dado de alta y compensado por incapacidad en un diez (10) por ciento de sus funciones fisiológicas totales. Apeló su caso ante la Comisión Industrial (en adelante la Comisión) y ésta, por Resolución de 19 de octubre de 1977, devolvió el caso al Fondo para evaluar la condición de osteoartritis. El 15 de octubre de 1979 el Administrador del Fondo notificó su decisión luego de la evaluación realizada por sus facultativos médicos. En ella se le diagnosticó "osteoartritis, condición no relacionada".

Insatisfecho con la determinación del Fondo, presentó la última de una serie de apelaciones infructuosas ante la Comisión, la cual es objeto del recurso ante nos. El 19 de marzo de 1985 se celebró una vista pública ante uno de los oficiales examinadores de la Comisión. En él testificó el perito del Fondo, Dr. Manuel Varela, y el consultor de la Comisión, Dr. Asdrúbal Arzola. Según surge del informe redactado por el Oficial Examinador, el doctor Arzola in-

dicó que la osteoartritis no estaba relacionada con la caída. No obstante indicó que "la decisión sobre si se debe compensar al obrero por los cambios que hay en el cuello y en la espalda es difícil por el hecho de que no puede uno precisar si el trauma que él recibió alteró de alguna forma esos cambios que habían".(¹) Indicó, además, que los cambios osteoartríticos "pueden ser producidos por traumas". Señaló que "un individuo que tiene estos cambios se traumatiza y le duele más que a una persona normal", aunque *consideró que la caída no pudo haber empeorado su situación.*

Por su parte, el Dr. Manuel Varela señaló que *no puede decir que el traumatismo agravó la condición osteoartrítica, ya que la lectura de las radiografías tomadas a raíz del accidente ocurrido en 1971 y las tomadas en 1984 reflejan poco cambio.* Señala, además, que si el trauma hubiese agravado la condición se notaría la diferencia.(²) El médico consultor de la Comisión, Dr. José Vega, *concurrió con el doctor Varela en cuanto a la no relación del trauma con el agravamiento de la osteoartritis.*

El 10 de julio de 1985 la Comisión, fundamentada en el informe del Oficial Examinador, emitió una resolución en la cual confirmó la decisión del Fondo y ordenó el cierre y archivo del caso. El 7 de agosto el lesionado presentó una moción de reconsideración a la Comisión. El 8 de mayo de 1991 la Comisión acogió la moción de reconsideración y revocó la decisión del Fondo. Concluyó que la condición osteoartrítica fue agravada por el accidente. Cita, en apoyo de su determinación, abundante literatura médica y se fundamenta jurídicamente en jurisprudencia de este Tribunal en relación con la interpretación liberal de la Ley del Sistema de Compensaciones por Accidentes del Trabajo(³) en favor del obrero cuando existe duda razonable sobre la compensabilidad de un accidente del trabajo. Inconforme,

---

(¹) Expediente del lesionado, pág. 148.

(²) Expediente del lesionado, pág. 148.

(³) Ley Núm. 45 dè 18 de abril de 1935 (11 L.P.R.A. sec. 1 *et seq.*).

el Administrador del Fondo solicita que revisemos dicha determinación.

## II

En su alegato, el recurrente plantea únicamente un error:

> Erró la [sic] Honorable Comisión Industrial al resolver que los hallazgos radiológicos de osteoartritis, presentados por el recurrido, el día 18 de mayo de 1971, fecha del accidente, guardan relación con esto por agravación. Dicha determinación es contraria a la opinión médica unánime en el caso. Además, carece de toda base científica pues, no existe duda de que el accidente no fue causa ni empeoró la enfermedad degenerativa diagnosticada.
>
> Por tanto, mediante el error, se pretende ordenar que se compense una condición en la que ni el trabajo ni las lesiones del accidente fueron factor. Alegato del recurrente, pág. 3.

Antes de analizar el error señalado, es necesario discutir algunos conceptos jurídicos pertinentes a la controversia de autos.

La Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935 (11 L.P.R.A. sec. 1 *et seq.*), es el estatuto remediador que existe en Puerto Rico para atender la salud y seguridad en el empleo. El propósito de su aprobación es "PROMOVER EL BIENESTAR DE LOS HABITANTES DEL PUEBLO DE PUERTO RICO, EN O LO REFERENTE A ACCIDENTES QUE CAUSEN LA MUERTE LESIONES, ENFERMEDADES O MUERTE DERIVADAS DE LA OCUPACIÓN DE LOS TRABAJADORES EN EL CURSO DE SU EMPLEO; ESTABLECER EL DEBER DE LOS PATRONOS EN COMPENSAR A SUS TRABAJADORES O BENEFICIARIOS ... [DE ESTOS ACCIDENTES, LESIONES, ENFERMEDADES O MUERTES OCURRAN]".[4] A tenor del pro-

---

[4] Exposición de Motivos de la Ley Núm. 45 de 18 de abril de 1935, Leyes de Puerto Rico pág. 251.

pósito que la inspira, la ley dispone en su Art. 2(⁵) que, para que un obrero lesionado tenga derecho a la compensación que fija la ley, la condición o lesión debe sobrevenir como resultado de un acto o una función inherente al trabajo, que haya ocurrido en el curso de éste y como consecuencia de tal. Si no concurren los tres (3) requisitos, el accidente no será compensable. *Díaz Ortiz v. F.S.E.*, 126 D.P.R. 32, 38 (1990). Debe existir nexo o relación causal entre la lesión o enfermedad del obrero y el trabajo. *Pacheco Pietri y otros v. E.L.A. y otros*, 133 D.P.R. 907 (1993); *Reyes Vda. de Morales v. Policía de P.R.*, 142 D.P.R. 180 (1996).

No obstante, una condición preexistente es compensable cuando dicha condición se agrava o se acelera como resultado de las labores realizadas en el empleo. *Reyes Vda. de Morales v. Policía de P. R.*, supra.

El Art. 2 de la Ley Núm. 45, *supra*, 11 L.P.R.A. sec. 2, dispone, en lo pertinente:

> Est[a ley] por ser de carácter remedial se interpretará liberalmente, y cualquier duda razonable que en su aplicación sugiere en cuanto a la existencia de relación causal entre el trabajo u ocupación del obrero o empleado, la lesión, incapacidad o muerte, o el carácter ocupacional de una enfermedad, deberá resolverse a favor del obrero o sus beneficiarios.

La "duda razonable" se derrota cuando se demuestra de manera clara y convincente que no existe una relación de causalidad entre el trabajo del obrero y su incapacidad o muerte. *Ortiz Candelario v. Comisión Industrial*, 90 D.P.R. 387, 407 (1964); *Reyes Vda. de Morales v. Policía de P.R.*, supra.

## III

A la luz de los principios antes discutidos, debemos determinar si la prueba examinada por la Comisión justifica

---

(⁵) 11 L.P.R.A. sec. 2.

la duda apreciada por ésta con respecto a si la lesión sufrida por el obrero agravó su condición osteoartrítica.

La Comisión citó abundante literatura médica en apoyo de su determinación. Algunas autoridades han señalado que el trauma puede ser un agente agravante de una condición asintomática de osteoartritis previa. A. Mann, *Mann's Medical Handbook for Litigation*, Charlottesville, Va., The Michie Co., 1985, págs. 342–343. Sin embargo, según consta de los autos, la prueba aportada por los peritos fue clara y precisa. Todos los médicos que testificaron ante la Comisión señalaron que no existía relación causal entre el trauma sufrido por don Inocencio y la agravación de la condición de osteoartritis.

Dicha opinión estuvo fundamentada en la comparación de las radiografías tomadas al obrero a raíz del accidente original, que ya reflejaban su condición de osteoartritis, con las que le fueron tomadas en 1984, las cuales no demostraron cambio significativo alguno en dicha condición a pesar del tiempo transcurrido: trece (13) años.

En *Alonso García v. Comisión Industrial*, 103 D.P.R. 712, 715 (1975), señalamos que no puede sostenerse una decisión a base de una prueba pericial "vaga, superficial e imprecisa", y que rechazaremos toda prueba "que equivalga a especulación o conjetura basada en hechos subsidiarios que no sostengan adecuadamente las conclusiones a que llegan". Véase, además, *Morell v. F.S.E.*, 110 D.P.R. 709, 714 (1981). Si no podemos sostener una decisión a base de una prueba pericial vaga, superficial e imprecisa, entonces debemos entender *que si se presenta prueba pericial precisa, clara y contundente, como la presentada en el caso de marras, es necesario resolver de acuerdo con ésta.* La Comisión incidió, pues, al no sostener la decisión del Fondo en este caso, que estuvo fundamentada en prueba pericial clara y precisa. Véase *Díaz Ortiz v. F.S.E.*, 126 D.P.R. 32, 41 (1990).

Este Tribunal, en circunstancias ordinarias, no alterará las conclusiones de la Comisión que estén sostenidas por la prueba pericial en el caso, en ausencia de razón al-

guna que justifique intervenir con la apreciación hecha. *González Santiago v. F.S.E.*, 118 D.P.R. 11 (1986). Pero "este Tribunal en ejercicio de su facultad revisora tiene amplia discreción en la apreciación de la prueba pericial médica, pudiendo aun adoptar su propio criterio en la apreciación o evaluación de la misma". *Alonso García v. Commisión Industrial*, supra, págs 714–715. Véanse: *Valldejuli Rodríguez v. A.A.A.*, 99 D.P.R. 917 (1971); *Prieto v. Maryland Casualty Co.*, 98 D.P.R. 594 (1970); *Concepción Guzmán v. A.F.F.*, 92 D.P.R. 488 (1965), y *E.L.A. v. Fonalledas Córdova*, 84 D.P.R. 573 (1962). Por lo tanto, se revoca la resolución emitida por la Comisión el 8 de mayo de 1991, que otorgó una compensación al recurrido Inocencio Agrón Pérez.

Lo pronunció y manda el Tribunal y certifica el señor Secretario del Tribunal Supremo. El Juez Asociado Señor Rebollo López concurrió con el resultado mediante opinión escrita. El Juez Asociado Señor Hernández Denton concurrió con el resultado sin opinión escrita.

*(Fdo.) Francisco R. Agrait Lladó*
*Secretario del Tribunal Supremo*

— O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

La mayoría de los integrantes del Tribunal revoca la decisión emitida por la Comisión Industrial de Puerto Rico por el *exclusivo* fundamento de que la misma resultaba improcedente en vista del hecho de que la decisión que emitiera el Fondo del Seguro del Estado (en adelante el Fondo) en el presente caso era una "basada en prueba pericial clara y concisa".

Nos preocupa que el Tribunal guarde "silencio" sobre el hecho de que la errónea decisión de la Comisión Industrial que revisamos, *fue emitida en etapa de reconsideración, ba-*

*sada la misma en literatura médica que el Fondo no tuvo la oportunidad de refutar*; situación que resulta impermisible y que la mayoría no debe pasar por alto por el bien de todas las partes que acuden, a diario, ante dicha comisión.

I

Como es de todos conocido, los tribunales de justicia están *obligados* a tomar conocimiento judicial de la Constitución y leyes del Estado Libre Asociado y de la Constitución y leyes de Estados Unidos. Además, *pueden* tomar conocimiento judicial de las leyes y el derecho de los estados y territorios de Estados Unidos, así como de las reglas y reglamentos del Estado Libre Asociado y de Estados Unidos. Véase Regla 12 de Evidencia de 1979 (32 L.P.R.A. Ap. IV). Por otro lado y, en lo pertinente, no debe haber duda del hecho de que los tribunales pueden tomar conocimiento judicial de literatura médica; ello, naturalmente, al amparo de las disposiciones de la Regla 11(A)(1) y (2) de Evidencia, 32 L.P.R.A. Ap. IV.

Conforme establece la Sec. 3.13 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2163(d), *las agencias administrativas pueden tomar conocimiento oficial de todo aquello que pueda ser objeto de conocimiento judicial en los tribunales*. Un conocedor de esta materia ha señalado que las agencias administrativas, "debido a su presunto conocimiento especializado pueden tomar conocimiento oficial *en una dimensión más amplia* que la de los tribunales sobre las materias que le han sido delegadas y la información que recopilan de diversas maneras. Se justifica este enfoque porque están capacitados como expertos para tomar conocimiento de los hechos notorios y obvios en su campo de actividad especializada". (Énfasis suplido.) D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Colombia, Ed. Forum, 1988, pág. 184.

Ahora bien, sabido es que los tribunales apelativos, al

ejercer su función revisora, están en la obligación de resolver el caso ante su consideración a base de la prueba —oral, documental y pericial— que desfiló en el juicio celebrado en instancia; debiendo abstenerse de utilizar literatura, pertinente a la cuestión en controversia, que no fue objeto de consideración a nivel de instancia. *Ríos Ruiz v. Mark*, 119 D.P.R. 816, 821–822 (1987).

El referido principio está plasmado en las disposiciones de la Sec. 3.18 de la citada Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2168. Dicha disposición legal establece que el "expediente de la agencia constituirá la *base exclusiva* para la acción de la agencia en un procedimiento adjudicativo bajo este capítulo y para la revisión judicial ulterior". (Énfasis suplido.)

Como correctamente señala el profesor Fernández Quiñones, en relación con el proceso administrativo, "[l]a aceptación de la doctrina del conocimiento oficial no debe ser entendida en forma irrestricta". Fernández, *op. cit.* Es indispensable que exista: "(1) especificidad del hecho, [puesto que] la agencia no puede descansar en su especialidad y, por lo tanto, tiene que particularizar la fuente de donde proviene la información; (2) *la oportunidad de que la parte contraria refute la información o presente argumentos adicionales que clarifiquen los hechos sobre los cuales se ha tomado conocimiento oficial. Estos principios son salvaguardas procesales para garantizar un procedimiento justo*". (Énfasis suplido.) Íd.

## II

En el presente caso, y luego de la celebración de las correspondientes vistas evidenciarias, la Comisión Industrial emitió decisión *confirmatoria* de la emitida por el Fondo. Inconforme, el obrero radicó una moción de reconsideración. La Comisión Industrial, *en etapa de reconsideración y citando literatura médica que no había*

*sido anteriormente objeto de consideración,* reconsideró su decisión original y *revocó* la decisión del Fondo.

Dicha actuación resulta *violatoria* no sólo del debido procedimiento de ley, sino que de las disposiciones de la antes citada Sec. 3.18 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico. El Fondo nunca tuvo la oportunidad de refutar esa literatura médica que la Comisión Industrial utilizó como fundamento para reconsiderar su decisión original. Procede, en esas circunstancias, la revocación de la decisión emitida por la Comisión Industrial.