# 2008 DTA 63

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL I**

AUREA RIVERA GONZÁLEZ
Recurrida

v.

FONDO DEL SEGURO DEL ESTADO
Recurrente

Núm. KLRA-2007-00319

San Juan, Puerto Rico, a 24 de abril de 2008

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz,
y los Jueces Ramírez Nazario y Piñero González

Ramírez Nazario, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

Comparece ante nos mediante escrito de Revisión Judicial, la Corporación del Fondo del Seguro del Estado (en adelante el Fondo o el recurrente) y solicita que se revise la Resolución dictada por la Comisión Industrial, (en adelante la Comisión) el 19 de enero de 2007, notificada el 15 de febrero de 2007. En la misma se determinó que Doña Áurea Rivera González (en adelante la recurrida o señora Rivera) era acreedora de una incapacidad total y permanente conforme a los factores socio-económicos presentes en el caso. El Fondo solicitó oportuna reconsideración, la cual fue rechazada de plano. Inconforme, acude ante nos con un recurso de revisión administrativa.

Analizados los escritos presentados, así como el derecho aplicable, se revoca la resolución recurrida.

## I

El 9 de octubre de 1991, la señora Rivera, empleada de la Universidad de Puerto Rico en el Recinto de Ciencias Médicas, sufrió un accidente mientras se dirigía a su área de trabajo frente a una caseta de guardia de seguridad del Recinto. Al momento del accidente, la recurrida contaba con 60 años y se desempeñaba como Recaudadora Auxiliar del Departamento de Contabilidad. Al reportar y describir dicho accidente, la recurrida sostuvo que *"me raspé"* la pierna izquierda y *"me di"* en la pierna derecha. [1]

La señora Rivera fue tratada por trauma de rodilla derecha y pierna izquierda y se le dio de alta sin incapacidad el 2 de febrero de 1993. [2] Esta decisión fue apelada ante la Comisión, quien a su vez confirmó la decisión de alta emitida por el Fondo en Vista Médica celebrada el 2 de agosto de 1993 y notificada el 10 de agosto de 1993.

Este mismo año (1993), la señora Rivera se acogió a los beneficios de retiro de la Universidad de Puerto Rico por sus años de servicio. El 8 de septiembre de 1993, la recurrida solicitó al Fondo la reapertura de su caso y se le denegó, ya que el Fondo entendió que no había hallazgo médico de una recaída. Se celebró una Vista Médica el 8 de febrero de 1996 ante la Comisión para revisar la decisión del fondo de no reabrir el caso de la lesionada. En dicha vista, los médicos presentes resolvieron devolver el caso al Fondo para que se expresara sobre una condición de espalda baja que la recurrida alegó estar sufriendo a consecuencia del accidente. Según surge del Resultado del Examen Médico de la vista Médica, la recurrida indicó que llevaba tratamiento privado y que se encontraba trabajando en aquel momento. [3] Esto, a pesar de que de otros documentos en autos se desprende que se había retirado en el 1993.

El Fondo, basado en la opinión del Dr. Rafael A. Rosa, reconoció que la condición de espalda baja era una condición relacionada con el accidente por agravación. Así, luego de recibir tratamiento, la recurrida fue dada de alta el 29 de abril de 1997 con un 20% de las funciones fisiológicas generales por la condición de espalda, según se desprende de la Decisión del Administrador de 10 de septiembre de 1997, notificada el día 30 del mismo mes y año. [4]

Esta decisión fue, a su vez, apelada ante la Comisión y revisada el 2 de septiembre de 1998 en Vista Médica donde los doctores recomendaron que fuese evaluada por el Dr. Mercado, neurocirujano de la Comisión. Éste, a su vez, devolvió el caso al Fondo para que fuese reevaluado por el neurocirujano del Fondo. Ambos doctores confirmaron la incapacidad y el tratamiento ofrecido.

El 19 de enero de 1999, la recurrida, por conducto de su representación legal, solicitó al Fondo que se le proveyera un tratamiento médico en descanso porque había desarrollado una condición emocional a consecuencia del accidente. [5] El Fondo la evaluó y trató por la condición emocional desarrollada y dio de alta a la señora Rivera el 14 de octubre de 1999 con un diagnóstico de distimia moderada concediéndole un 15% de incapacidad por las funciones fisiológicas generales. Esta decisión fue apelada y la Comisión Industrial recomendó en Vista

Médica celebrada el 9 de enero de 2002 aumentar la incapacidad a un 30% por pérdida de las funciones fisiológicas generales por condición emocional, independiente a lo otorgado por la condición orgánica. Esto, dado que la recurrida no podía tomar medicamento oral, ya que al momento padecía de dolencias estomacales que se lo impedían. **[6]**

Mediante Resolución del 21 de marzo de 2002, la señora Rivera fue referida a tratamiento psiquiátrico con carácter urgente como resultado de la evaluación efectuada en vista publica. **[7]** El 6 de junio de 2002 se rindió un informe final psiquiátrico por el Dr. Guillermo J. Hoyos donde establece no haber encontrado problema emocional y que la recurrida no ameritaba tratamiento psiquiátrico alguno, ya que estaba totalmente compensada. Se le da de alta y ésta apela la decisión. El 22 de octubre de 2002 se celebró una Vista Médica en la Comisión para revisar el alta de la condición emocional. Mediante Resolución de Vista Médica notificada el 29 de octubre de 2002, se decide referir a la recurrida al Fondo para que fuera evaluada por el Comité de Factores Socio-Económicos. **[8]**

El 25 de diciembre de 2003, notificada el 23 de diciembre del mismo año, el Fondo emite su decisión sobre incapacidad total por factores socioeconómicos denegando la misma. El Comité entendió que las incapacidades fueron justamente compensadas, que la recurrida recibe pensión por mérito por años de servicio quedando fuera del mercado de trabajo por años de servicio y por edad y no por razón de incapacidad para realizar las funciones del empleo. **[9]**

La señora Rivera apeló esta decisión y se celebró una vista pública el 14 de noviembre de 2006 para revisar la decisión del Fondo sobre factores socioeconómicos. A dicha vista no compareció la testigo citada, Sra. Sol Carina Ayala, quien evaluó y emitió un Informe del Especialista en Rehabilitación el 19 de agosto de 2003. **[10]**

El 19 de enero de 2007, notificada el 15 de febrero de 2007, la Comisión emitió su Resolución resolviendo que la recurrida tiene derecho a la compensación por incapacidad total permanente por factores socioeconómicos. La Comisión, en su resolución, acepto e hizo formar parte el informe del Oficial Examinador que presidió la vista pública celebrada el 14 de noviembre de 2006. El 7 de marzo de 2007, el Fondo presentó una moción de reconsideración donde solicita que se confirme la decisión del Fondo sobre la denegación de la incapacidad total y permanente por factores socio-económicos.

No habiendo actuado la Comisión sobre dicha moción de reconsideración e inconformes con la determinación, el 20 de abril de 2007, el Fondo presentó ante este Tribunal su Escrito de Revisión. El 18 de mayo de 2007, la señora Rivera presentó su oposición al escrito de revisión.

## II
En su recurso, la Corporación del Fondo del Seguro del Estado alega que la Comisión Industrial cometió los siguientes errores:

*"Primero:*

*Erró al no establecer determinaciones de hechos en su Resolución.*

*Segundo:*

*Erró al otorgar una incapacidad total y permanente a la lesionada por factores socioeconómicos a base de la prueba presentada.*

*Tercero:*

*Erró al considerar condiciones médicas no relacionadas, para determinar que la lesionada era acreedora de los derechos de una incapacidad total y permanentemente por factores socioeconómicos.* "

## III

### A

La norma en nuestro ordenamiento jurídico es que las determinaciones de las agencias administrativas merecen gran deferencia judicial y sus decisiones se presumen correctas. *Castillo v. Depto. del Trabajo,* 152 D.P. R. 91 (2000); *Costa, Piovanetti v. Caguas Expressway,* 149 D.P.R. 881, (1999). Nuestro Tribunal Supremo ha resuelto además que las decisiones de los organismos administrativos merecen la mayor deferencia judicial por razón del conocimiento especializado y la experiencia en cuanto a los asuntos que les son encomendados. *Otero Mercado v. Toyota de Puerto Rico,* 163 D.P.R. ___ (2005), **2005 J.T.S. 13**.

Al revisar una decisión administrativa, el criterio rector será la razonabilidad en la actuación de la agencia. Conforme al criterio de razonabilidad y deferencia, como ya se ha dicho, los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo, *"si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad".* *Otero Mercado v. Toyota de Puerto Rico, supra; Pacheco Torres v. Estancias de Yauco,* 160 D.P.R. 409 (2003); *Domínguez Talavera v. Caguas Expressway Motors, Inc.,* 148 D.P.R. 387 (1991).

La deferencia solamente cede cuando no está basada en evidencia sustancial; cuando el organismo administrativo ha errado en la aplicación de la ley, o cuando ha mediado una actuación irrazonable o ilegal. *Otero Mercado v. Toyota de Puerto Rico, supra.*

Se debe tener presente que los procedimientos y decisiones de un organismo administrativo tienen una presunción de corrección y regularidad que debe ser respetada, mientras la parte que la impugne no produzca suficiente evidencia para derrotarla en un proceso adecuado y ante un foro competente. *Pérez Vélez v. VPH Motors Corp.,* 152 D.P.R. 475 (2000); *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194 (1987); *M. &B.S., Inc. v. Departamento de Agricultura,* 118 D.P.R. 319 (1987).

Un Tribunal, en ejercicio de su facultad revisora, tiene amplia discreción en la apreciación de la prueba pericial médica, pudiendo aún adoptar su propio criterio en la apreciación o evaluación de la misma. *Alonso García v. Comisión Industrial,* 103 D.P.R. 712 (1975).

Nuestra más alta curia estableció que la función que tienen las determinaciones de hechos y conclusiones de derecho en una decisión administrativa es proporcionar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa facilitando esa tarea; fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; ayudar a la parte afectada a entender porqué el organismo administrativo decidió como lo hizo manteniéndola informada para poder decidir si acude al foro judicial o acata la determinación; y por último, evitar que los tribunales se apropien de funciones que corresponden propiamente a las agencias administrativas bajo el concepto de especialización y destreza (expertise). *Municipio de San Juan v. Junta de Planificación, ARPE,* 169 D.P.R. ___ (2006); **2006 J.T.S. 164**.

### B

La Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, 11 L.P.R.A. sec. 1 *et seq.,* es el estatuto remediador que existe en Puerto Rico para atender la salud y seguridad en el empleo. El propósito de su aprobación, según su exposición de motivos, es promover el bienestar de los habitantes del Pueblo de Puerto Rico en lo referente a accidentes, lesiones, enfermedades o muertes derivadas de la ocupación

de los trabajadores en el curso de su empleo, y establecen el deber de los patronos en compensar a sus trabajadores o beneficiarios de estos accidentes, lesiones, enfermedades o muertes ocurran. *Agrón Pérez v. F.S.E.*, 142 D.P.R. 573 (1997).

A tenor con el propósito que la inspira, la ley dispone en su Artículo 2, 11 L.P.R.A. sec. 2, que para que un obrero lesionado tenga derecho a la compensación que fija la ley, la condición o lesión debe sobrevenir como resultado de un acto o función inherente al trabajo, que haya ocurrido en el curso de éste y como consecuencia del mismo. El Artículo 2, *supra*, además dispone que por ser una ley de carácter remedial, ésta se interpretará liberalmente y cualquier duda razonable que en su aplicación surgiere en cuanto a la existencia de relación causal entre el trabajo u ocupación del obrero o empleado, la lesión, incapacidad o muerte, o el carácter ocupacional de una enfermedad, deberá resolverse a favor del obrero o sus beneficiarios. *Agrón Pérez v. F.S.E., supra.* Esto significa que si al aplicar la ley a los hechos y circunstancias del caso, el récord no demuestra de manera clara y convincente que no existe una relación de causalidad entre el trabajo del obrero y su incapacidad o muerte, esto produce un estado de duda razonable que requiere brindar la protección cobijada en la ley. *Lebrón Bonilla v. E.L. A.,* 155 D.P.R.___ (2001), **2001 J.T.S. 150**.

La "*duda razonable*" se derrota cuando se demuestra de manera clara y convincente que no existe una relación de causalidad entre el trabajo del obrero y su incapacidad o muerte. *Agrón Pérez v. F.S.E., supra; Ortiz Candelario v. Comisión Industrial,* 90 D.P.R. 387 (1964).

La Ley de Compensaciones por Accidentes del Trabajo, *supra*, provee un amplio esquema para la concesión de distintos tipos de beneficios a obreros que sufren accidentes o lesiones en el curso de su empleo. En términos generales, la Ley provee tres tipos de beneficios a los trabajadores lesionados: (1) tratamiento y asistencia médica, incluyendo medicinas y servicios de hospital cuando fuere necesario; (2) compensación, en forma de dietas, durante el período de recuperación, mientras el obrero continúe temporeramente incapacitado para trabajar, y (3) compensación adicional por cualquier incapacidad parcial o total permanente resultante. 11 L.P.R.A. sec. 3; *Ríos Rivera v. Comisión Industrial,* 108 D.P.R. 808 (1979). Esos beneficios se proveen a través del pago por el patrono de las primas compulsorias que dispone la Ley. 11 L.P.R.A. sec. 19.

La Ley establece que los beneficios antes mencionados se extiendan a los obreros que sufran lesiones, se inutilicen, o que pierdan la vida por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste, y como consecuencia del mismo o por enfermedades o muertes derivadas de la ocupación,.... 11 L.P.R.A. sec. 2. De acuerdo a esta disposición, los requisitos para que un accidente sea compensable son: (1) que provenga de cualquier acto o función del obrero, (2) que sea inherente a su trabajo o empleo, y (3) que ocurra en el curso de éste. *Admor., F.S.E. v. Comisión Industrial,* 101 D.P.R. 56 (1973).

Siguiendo el mandato legislativo, nuestro Tribunal Supremo ha adoptado una interpretación expansiva de la cubierta del estatuto para incluir diversos tipos de lesiones, aunque no se consideren estrictamente como enfermedades ocupacionales o accidentes del trabajo, siempre que la causa de las mismas pueda ser razonablemente trazada a alguna función o actuación relacionada con el empleo. *Cuevas v. Ethicon Div. of J&J Prof. Co.,* 148 D.P.R. 839 (1999).

En cuanto a condiciones emocionales que se desarrollen, nuestro Tribunal Supremo resolvió en *Morell Morell v. F.S.E.,* 110 D.P.R. 709 (1981), que para que las mismas sean compensables bajo la Ley, debe establecerse, además de la necesaria relación causal con el empleo, que la condición en cuestión origina por sí misma una incapacidad para trabajar o agrava una incapacidad existente, lo que debe probarse de manera convincente a través de prueba pericial basada en exámenes psiquiátricos adecuados.

Por otro lado, la Ley de Compensaciones, en su Artículo 3, inciso (d), 11 L.P.R.A. sec. 3 (d), regula la

compensación por incapacidad total permanente, definiendo dicha incapacidad de la siguiente manera:

*"Se considerará incapacidad total la pérdida total y permanente de la visión industrial de ambos ojos, la pérdida de ambos pies por el tobillo o más arriba, la pérdida de ambas manos por la muñeca o más arriba; la pérdida de una mano y un pie, perturbaciones mentales totales que sean incurables, y **las lesiones que tengan por consecuencia la incapacidad total y permanente del obrero o empleado para hacer toda clase de trabajo u ocupaciones remunerativas.***" [Énfasis suplido]

En el caso de *Arzola Maldonado v. Comisión Industrial*, 92 D.P.R. 549 (1965), el Tribunal Supremo indicó que *"el criterio fundamental para resolver si un trabajador ha quedado totalmente incapacitado, es la habilidad que posea después de la lesión o accidente para dedicarse a un trabajo que le produzca ingreso en forma ordinaria y de manera estable."*

Igualmente hay que tener presente que al interpretar la Ley de Compensaciones por Accidentes del Trabajo, reiteradamente se ha señalado que la determinación de si un obrero tiene o no incapacidad total no descansa únicamente en el análisis puramente médico del impedimento físico del trabajador, sino que requiere, además, la evaluación de otros factores socioeconómicos tales como su edad, sexo, profesión, escolaridad, las oportunidades de empleo en el área donde reside el obrero y otros. *Agosto Serrano v. F.S.E.*, 132 D.P.R. 866 (1993).

Con el objetivo de *"establecer las bases que permitan la uniformidad en la tramitación, estudio y determinación de los casos en que se alega incapacidad total permanente por factores socioeconómicos"* y en conformidad con las opiniones del Tribunal Supremo en los casos *Rodríguez v. Comisión Industrial*, 90 D.P.R. 764 (1964); *Arzola v. Comisión, supra,* y *Herrera v. Comisión*, 108 D.P.R. 316 (1979), se creó, el 1 de junio de 1987, el Comité de Factores Socio-Económicos, (en adelante el Comité). *Agosto Serrano v. F.S.E., supra.* **[11]**

El mencionado Comité es la estructura administrativa creada en cada oficina regional del Fondo para ayudar a realizar la fundamentalísima función de determinar si un obrero lesionado tiene la habilidad necesaria para realizar un empleo remunerativo. Al interpretar la Ley de Compensaciones por Accidentes del Trabajo, *supra,* reiteradamente se ha señalado que la determinación de si un obrero tiene o no incapacidad total no descansa únicamente en el análisis puramente médico del impedimento físico del trabajador, sino que requiere además la evaluación de otros factores socioeconómicos, tales como su edad, sexo, profesión, escolaridad, las oportunidades de empleo en el área donde reside el obrero y otros. Se trata de un cuerpo permanente que asesora al Administrador en la evaluación del potencial de trabajo remunerativo de un lesionado. *Agosto Serrano v. F.S.E., supra.*

A tales efectos, el Comité estudia, examina y evalúa, en adición a la incapacidad desde el punto de vista médico, los factores arriba esbozados y rinde un informe determinando si el lesionado puede realizar aquellos aspectos sustanciales y básicos de su trabajo, o si sus servicios son tan limitados que no hay mercado o demanda para los mismos. *Herrera Ramos v. Comisión Industrial, supra.*

La revisión de la determinación de si un obrero o empleado es elegible o no a los beneficios de una incapacidad total dentro del contexto del Artículo 3 de la Ley de Compensaciones es claramente un asunto que le compete a la Comisión como árbitro final de los derechos de los obreros a nivel administrativo. El hecho de que la elegibilidad a los beneficios de incapacidad total por el Fondo dependa inicialmente de la evaluación y recomendación que haga el Comité, no afecta la autoridad administrativa final de la Comisión ni sus facultades cuasi-judiciales. Como ya hemos señalado, dicho Comité es un cuerpo auxiliar que ejerce una importante función de asesoramiento, pero sus labores forman parte de todo un entramado administrativo en el cual la palabra final la tiene la Comisión Industrial. La existencia y reglamentación del Comité no puede ser obstáculo que limite la autoridad de la Comisión, sobretodo cuando se trata de un reglamento que no es de naturaleza legislativa. *Agosto Serrano v. F.S.E., supra.*

## IV

En su primer error, el Fondo plantea que incidió la Comisión al no establecer en su decisión determinaciones de hechos. Veamos.

Hay que reconocer que el informe rendido por el Oficial Examinador, el cual fue adoptado por la Comisión en su resolución, no cumple estrictamente con las normas y guías de lo que debe contener una resolución de una agencia administrativa. Sin embargo, debemos puntualizar que, a pesar de esto, el mismo cumple su propósito y nos permite llevar a cabo adecuadamente nuestra función revisora. Lo propio es que en una resolución de una agencia administrativa se plasmen determinaciones de hechos y conclusiones de derecho para facilitar, entre otras cosas, nuestra función revisora. No obstante, en el caso de autos no existen controversias significativas sobre los hechos esenciales. No existiendo mayores controversias en cuanto a los hechos, las determinaciones de hechos que debe contener toda resolución no son indispensables para que podamos disponer del presente caso.

La disputa principal en este caso es si la lesionada cumple con los criterios para ser acreedora de una compensación total y permanente por factores socioeconómicos a raíz de la incapacidad parcial permanente concedida por su condición orgánica y emocional. Se trata más bien de una determinación de derecho basada en criterios médicos, de ley y reglamentación. Por esto, entendemos que el primer error señalado no se cometió.

En su segundo y tercer señalamiento de error, el Fondo alega que la Comisión incidió al reconocer a la recurrida el derecho a una incapacidad total y permanente por factores socioeconómicos a base de la prueba presentada. Además, que se consideraron condiciones médicas no relacionadas para determinar que era acreedora a tal incapacidad. Por estar relacionados entre sí, los discutiremos conjuntamente.

Debemos comenzar por destacar varios hechos que no están en controversia. Surge del expediente que la recurrida continuó trabajando por dos años después de su accidente en 1991, cuando contaba con 61 años, hasta lograr su jubilación por años de servicio en el 1993 y acogerse al retiro. Por dicho accidente, finalmente se le reconoció una incapacidad parcial permanente del 20% de sus funciones fisiológicas generales en el año 1997. Posteriormente, en el año 1999, se le reconoció una incapacidad parcial permanente de un 15% de sus funciones fisiológicas generales por condición emocional. Esta fue aumentada al 30% en el año 2002. Por ende, su incapacidad parcial permanente aumentó a un 50% de sus funciones fisiológicas generales al sumar la incapacidad orgánica y la emocional.

Cuando se refiere el caso al Fondo en el año 2002 para ser evaluado por el Comité de Factores Socioeconómicos, hacía aproximadamente 10 años que la recurrida se había acogido a los beneficios de retiro y recibía beneficios de la Administración del Seguro Social Federal. El Informe Socioeconómico para ser utilizado por el Comité se preparó el 12 de mayo de 2003. **[12]** En reunión celebrada el 26 de noviembre de 2003, el Comité determinó que no procedía la incapacidad total permanente por factores socioeconómicos. En síntesis, basó su determinación en que las incapacidades parciales otorgadas fueron justamente compensadas y la recurrida recibe una pensión por mérito, por años de servicio, que la deja fuera del mercado de trabajo. Así, el 5 de diciembre de 2003, el Fondo emitió su decisión denegando la incapacidad total permanente por factores socioeconómicos estableciendo en su parte dispositiva lo siguiente:

*"VISTOS los hechos que anteceden, así como la prueba en autos, SE RESUELVE, NO HA LUGAR, a la petición de concesión de una Incapacidad Total Permanente; por factores socioeconómicos, la peticionaria quedó fuera del mercado de trabajo por años de servicio y por edad y no por haber quedado incapacitada para realizar las funciones del empleo."* Así, ordenó el cierre y archivo del caso.

Inconforme con esta determinación, la recurrida acude ante la Comisión Industrial. Mediante la resolución recurrida, ésta le concede una incapacidad total por factores socioeconómicos. Para sostener su determinación, se basa mayormente en el contenido del Informe de la Especialista en Rehabilitación preparado por la señora Sol

Carina Ayala el 19 de agosto de 2003. De dicho informe, el Oficial Examinador cita lo siguiente en el suyo:

*"Esta lesionada ha cumplido su cuota de producción laboral. Sus condiciones le han ocasionado impedimento físico sustancial para cumplir con las demandas de su ocupación habitual. La edad que tiene, en combinación con dichas limitaciones, las cuales son compatibles con los diagnósticos reconocidos, la dejan fuera de competencia laboral, por lo que no se considera rehabilitable."* Luego de esto, el Oficial Examinador pasa a concluir que la combinación de las limitaciones provocadas por las condiciones físicas y emocionales reconocidas (que suman a una incapacidad equivalente al 50% de sus funciones fisiológicas generales), *"son las que dejan a esta lesionada fuera del mercado laboral y la hacen una candidata no rehabilitable."* En su opinión, si a esto se le suma el aspecto económico combinado con otros factores, resulta un caso meritorio para la Incapacidad Total por Factores Socioeconómicos. No estamos de acuerdo.

De un examen del expediente surge que la recurrida no está desamparada económicamente. Sus gastos se cubren adecuadamente con sus ingresos, los cuales no absorben la totalidad de los mismos. La señora Rivera está protegida por otros estatutos de protección social como lo son el seguro social federal y el sistema de retiro tanto de ella como el de su esposo. Recibe $594.00 mensual del seguro social, $417.00 mensual de retiro y $280.00 mensual del retiro de su esposo, para un total de $1,291.00 al mes. Este ingreso es mayor que el sueldo que recibía cuando se acogió al retiro ($1,100.00). Tiene además una preparación académica universitaria, una vivienda propia que está salda y un automóvil sin deuda. Posee un seguro médico que es auspiciado por el plan de retiro de su antiguo patrono. Vemos además que el Fondo le proveyó a la recurrida los beneficios que contempla la Ley de Compensaciones, *supra*, que le correspondían, dada la incapacidad parcial permanente que le fue reconocida.

Tampoco está en controversia que la señora Rivera padece de una serie de enfermedades que no están relacionadas con el accidente del trabajo sufrido y que han surgido y/o empeorado con el devenir de los años. Algunas de éstas son; neuropatía en sus extremidades inferiores, condición degenerativa de las articulaciones inferiores y de la espina lumbosacral, hipertensión arterial, hernia de esófago, entre otras. Además, la recurrida ha sufrido varias operaciones en sus encías que nada tienen que ver con el accidente del trabajo ocurrido.

Dado este cuadro fáctico, es improcedente e inconsistente con los propósitos de la Ley de Compensaciones por Accidentes del Trabajo, *supra*, otorgar a la señora Rivera una incapacidad total y permanente por factores socioeconómicos luego de llevar alrededor de 15 años de jubilación. Entendemos que la decisión de la Comisión desvirtúa la razón de ser del Comité de Factores Socioeconómicos. La recurrida quedó fuera del campo laboral voluntariamente, ya que se acogió al retiro por sus años de servicio y su edad, y desde entonces, no ha interesado dedicarse a un trabajo que le produzca ingreso. El propósito del referido Comité es brindar una protección adicional al evaluar los casos de aquellos obreros o empleados que por razón de su incapacidad parcial permanente y ciertos factores socioeconómicos (tales como su edad, sexo, profesión, escolaridad, las oportunidades de empleo en el área donde reside), no puedan reintegrarse al campo laboral, o de poderlo hacer, no serían competitivos, no pudiendo generar ingresos y, por ende, quedando desamparados económicamente. Entendemos que la Comisión se equivocó al evaluar la prueba que obra en autos y adjudicar los beneficios de una incapacidad total y permanente por factores socioeconómicos a la recurrida.

Entendemos que la Comisión incidió al interpretar el informe de la Especialista en Rehabilitación del Fondo, [13] ya que no podía pasar por alto el hecho de que la lesionada estaba ya jubilada hacía 10 años, al momento de dicho informe, por lo que no se reintegraría más al campo laboral por voluntad propia. No dudamos la existencia de incapacidades como consecuencia del accidente. Sin embargo, éstas fueron debidamente compensadas y no impidieron que la recurrida continuara trabajando hasta que decidió acogerse al retiro por sus años de servicio. Dicho en otras palabras, la recurrida pudo culminar sus años de servicio público y obtener los beneficios por retiro a los que tenía derecho. Las condiciones relacionadas al accidente del trabajo no le impidieron completar su ciclo de trabajo. En un caso como éste, no procede hablar de rehabilitación alguna. Como bien señaló en su

informe la especialista en rehabilitación, señora Sol Carina Ayala, la recurrida *"ha cumplido su cuota de producción laboral."*

La actuación de la Comisión es irrazonable. La deferencia hacia las determinaciones administrativas cede ante una decisión que no está basada en evidencia sustancial. El Fondo ha señalado evidencia suficiente en el expediente que derrota la presunción de corrección que tiene la decisión administrativa recurrida. Considerado el expediente en su totalidad, tenemos que concluir que la incapacidad total permanente por factores socioeconómicos concedida por la Comisión es improcedente en derecho. Esto, aun dentro de la interpretación liberal que por tratarse de un estatuto de carácter remedial, estamos llamados a efectuar.

## V

Por los fundamentos que anteceden, resolvemos revocar la resolución recurrida emitida por la Comisión Industrial el 3 de enero de 2007.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2008 DTA 63

1. SURGE DEL INFORME PATRONAL. VÉASE APÉNDICE 3 DEL RECURSO DE REVISIÓN.

2. Según surge de la decisión del administrador sobre tratamiento médico. Véase Apéndice 4 del Recurso de Revisión

3. Véase Apéndice 6 del Recurso de Revisión.

4. VÉASE APÉNDICE 8 DEL RECURSO DE REVISIÓN.

5. VÉASE APÉNDICE 9 DEL RECURSO DE REVISIÓN.

6. VÉASE APÉNDICE 10 DEL RECURSO DE REVISIÓN.

7. VÉASE APÉNDICE 11 DEL RECURSO DE REVISIÓN.

8. VÉASE APÉNDICE 13 DEL RECURSO DE REVISIÓN.

9. VÉASE APÉNDICE 17 DEL RECURSO DE REVISIÓN.

10. VÉASE APÉNDICE 18 DEL RECURSO DE REVISIÓN.

11. VÉASE EL MEMORIAL EXPLICATIVO Y SECCIÓN I DEL REGLAMENTO SOBRE FACTORES SOCIO-ECONÓMICOS, REGLAMENTO NÚM. 3470 DE LA CORP. DEL FONDO DEL SEGURO DEL ESTADO.

12. VÉASE EL INFORME SOCIOECONÓMICO. APÉNDICE 16 DEL RECURSO DE REVISIÓN.

13. VÉASE APÉNDICE 18 DEL RECURSO DE REVISIÓN.